**CITY OF EL PASO, Appellant,**

v.

**Gene DONOHUE, Constructive Trustee, et al., Appellees.**

**No. 5448.**

Court of Civil Appeals of Texas.

El Paso.

March 1, 1961.

Rehearing Denied March 22, 1961.

———◆———

Travis White, City Atty., Robert J. Galvan, Bert Williams, Asst. City Attys., El Paso, for appellant.

Kemp, Smith, Brown, Goggin & White, Joe Rey, El Paso, for appellees.

FRASER, Justice.

This is a declaratory judgment case in which appellees sought to have the zoning of their property held invalid. The matter was tried to the court without a jury, the court holding that the applicable zoning ordinance of the City of El Paso was unreasonable, arbitrary and void, insofar as it applied to the appellees' property. The property here involved is a piece of land located on the south side of Paisano Drive, in the City of El Paso, and lies between Latta Street on the west, and Hammett Street on the east. There is a traffic control signal at the intersection of Hammett and Paisano. Appellees maintained that, since Paisano Drive had been built through that area some twelve years ago, the property is no longer suitable, and has little or no value, either for residences or apartments. It had been zoned for residential use only before Paisano Drive was built. The City maintained that the property was suitable for residences or apartments, and that it was necessary for the public welfare of the city and the traveling public to keep down the flow of local traffic on Paisano. The City maintained that to zone this area, or any part of it, for commercial uses would contribute more traffic to Paisano. It must be kept in mind that Paisano Drive is commercially zoned east and west of the area in question, and that this is an attempt on the part of the City to keep this middle section, so to speak, free from commercial establishments.

 It is settled law that, in cases of this nature, the property owner has the burden of showing that there is "no reasonable basis" for the refusal to re-zone, and it is up to him to show that the zoning matter of which he complains is arbitrary as far as he is concerned, and cannot be defended on the ground that there is a "substantial relationship between the zoning matter in question and the public health, safety, morals, or general welfare." City of Dallas v. Lively, Tex.Civ.App., 161 S.W.2d 895; Edge v. City of Bellaire, Tex.Civ. App., 200 S.W.2d 224.

 In approaching this question, it must be borne in mind that the property owner has certain inherent and constitutional rights to the full use of his property, and that such rights are subject only to that restraint which can be proven necessary to secure and maintain the common welfare. Therefore, zoning power is subordinate to the right to acquire, own and fully enjoy property, and these rights cannot be abridged except as above set forth. Lombardo v. City of Dallas, 124 Tex. 1, 73 S.W. 2d 475; City of Texarkana v. Mabry, Tex. Civ.App., 94 S.W.2d 871 (err. dis'm.); 10 Tex.Jur., 10-yr. Supp., 188, 189; Brehmer v. City of Kerrville, Tex.Civ.App., 320 S. W.2d 193.

We come now to consider the evidence in the case, in order to apply the legal principles set forth above. The appellees introduced the testimony of a number of qualified real estate men from the City of El Paso, some of whom have practically specialized in this area of town. There were six of these witnesses who testified that the property here involved is not suitable either for residence or apartment use. In addition to their testimony, there was testimony by some five representatives of various types of mortgage companies or lending agencies, who testified that the property had no value, or little value, under the present residential zoning situation, and that their companies would not be willing to

loan money for the erection of residences or apartments on this property. There was also evidence by several residents of the area as to the undesirability and uselessness of their adjoining properties as presently zoned, because of the fact that these properties face on the high-speed, dangerous traffic of Paisano Drive. The City produced three witnesses to counteract this testimony, but these witnesses were not real estate men or business men, testifying as such. One was a member of the City Plan Commission; one was Secretary to the Plan Commission; and the other is the Building Inspector for the City. The City did not present any other witnesses, in short, no evidence from real estate men or nearby residents, lending agencies, etc.

With regard to the City's argument that it is desirable and necessary to the public welfare to keep this middle area of Paisano Drive free from business traffic as possible, we have some doubt that this argument is sufficient justification to maintain a zoning restriction which so many witnesses testified rendered the appellees' property almost valueless and, in short, amounted to confiscation thereof. We have very grave doubts that this fact situation here justifies the City in keeping appellees' property zoned as it is, in order to keep additional traffic off of this middle area of Paisano Drive. It must be borne in mind that the evidence shows there is already a traffic light at Hammett and Paisano. Also, that directly south of this property, on Hammett and other streets which lead off of Paisano Drive, as shown by the evidence and the pictures, there are many places of business within two or three blocks of Paisano Drive to which people likely go by traversing Paisano until they get to Hammett or Latta Streets. These places of business include a truck terminal and supermarket. Furthermore, the evidence shows that there is much traffic using Hammett Street and Oak Street to cross into the Republic of Mexico via the Cordova Island bridge. Then, to, on the same side of the street there is a big public housing area, which

area is actually only about a block and a half away from the property in question and accommodates hundreds of families. Directly east from this public housing area there is the County Coliseum—a huge building constantly in operation, used for wrestling matches, prize fights, dancing, stock shows, rodeos, etc. Across the street from the public housing area is the Washington amusement park, with concessions, skating rinks, etc., and Dudley Field, a baseball park. Farther on down Paisano Drive, and on the same south side as the property in question, there is another large public housing area. It can be seen, therefore, that this traffic situation has already been affected by all of the businesses and installations mentioned above; and it is difficult, therefore, to single out appellees' property as being likely to contribute to this condition to such an extent as to justify the City's zoning ruling.

The City also maintains that this property is adequate for the type of residences that are maintained there. It must be noted, however, that in the next block, directly west of the property involved, the City has relaxed the zoning to permit the installation of a large filling station and a small restaurant. It would seem that this type of exception to the zoning rule would certainly contribute to the traffic problems of Paisano Drive; but the City says this property is unfit for residential use because of its shape and the fact that there is a drainage ditch behind it. We have here over a dozen witnesses who say that appellees' property is also unfit for residential use, and such testimony is contradicted only by the two witnesses associated with the Plan Commission, and the City Building Inspector. We are therefore faced with the situation that, while the City's zoning regulations cannot be overturned merely because property might be worth more, or a little more, if re-zoned, yet at the same time zoning regulations cannot be defended if they are arbitrary and confiscatory in effect; and here, the great mass of testimony is to that effect. That City main-

tains, and quite correctly, that the powers of a discretionary body like the City Plan Commission or the City Council cannot be overturned if the controversy is one where reasonable minds could differ; in other words, where there is substantial evidence on both sides, and the discretionary body must make a decision. We do not think that condition exists here, because of the large number of expert witnesses, all of whom testified in favor of appellees' position. There was no contradicting testimony by other real estate or mortgage company experts—only the testimony of the City representatives as outlined above. This does not, we think, present a situation where reasonable minds could or should differ, but presents, rather, a situation where the experts in the field say one thing and three City representatives another. This fact, coupled with the large numbers of businesses within a block or two of Paisano in this area, and the other installations as outlined above, does not make the zoning requirement realistic or, we think, defensible under the law. While we hesitate to call an action by a regularly constituted city body arbitrary, we do believe that the facts here make the results of the refusal to re-zone arbitrary and confiscatory.

The police power cannot be invoked when its invocation causes an oppressive property loss in proportion to the good to be accomplished. This is especially true if the desired result is somewhat speculative, as here. If the depreciation as the result of the zoning is such as to make the property practically worthless for its designated use, such constitutes confiscation. City of West University Place v. Ellis, 134 Tex. 222, 134 S.W.2d 1038; City of Lubbock v. Stubbs, 278 S.W.2d 519 (n. r. e.). These cases point up the necessity of weighing the equities; and here the fact situation illustrates that the equities appear to be substantially in favor of the appellees. The evidence shows that the appellees wished to construct a wrecking yard and towing service, and we cannot see where this business, being only a couple of blocks closer to Paisano than a dozen other businesses on Hammett and other streets, would so contribute to traffic on Paisano as to be violative of the public welfare.

On the basis, therefore, of the evidence as outlined above, and the law as stated, we believe that the trial court rendered the correct decision, as it seems clear that the evidence is overwhelmingly to the effect that the property is no longer useful for the purposes for which it is zoned, and it has not been satisfactorily shown that re-zoning, in accordance with appellees' desires, would be of damage to the public welfare.

Appellant's points are therefore overruled, and the decision of the trial court is affirmed.