Chrysler Motors Corporation, Appellant, *v.* Zoning Board of Adjustment, City of Philadelphia, Appellee.

364

Argued April 5, 1974, before Judges CRUMLISH, JR., MENCER and ROGERS, sitting as a panel of three.

*Carl K. Zucker*, with him *Reuben E. Cohen* and *Cohen, Shapiro, Polisher, Shiekman & Cohen*, for appellant.

*Wanda P. Chocallo*, Assistant City Solicitor, with her *James M. Penny, Jr.*, Assistant City Solicitor, *John Mattioni*, Deputy City Solicitor, and *Martin Weinberg*, City Solicitor, for appellee.

OPINION BY JUDGE ROGERS, April 26, 1974:

This is an appeal from an order of the Court of Common Pleas of Philadelphia County affirming the denial of a variance by the Zoning Board of Adjustment of the City of Philadelphia. Since the court below received no evidence, our duty is to determine whether or not the Board of Adjustment committed a manifest abuse of discretion or committed an error of law.

Roosevelt Chrysler Plymouth, Inc., an automobile sales agency, filed an application for a zoning permit for the use of a portion of property rented by it from Commonwealth Realty Investment Trust, the owner, as a parking lot for new cars. The permit was refused because the requested use was not permitted in the zoning district where proposed. The Board of Adjustment was asked to grant a variance.[1]

The applicant's premises are located on the west side of Roosevelt Boulevard and are bounded by the Boulevard on the east, Hartel Avenue on the south, Borbeck Street on the north, and Bradford Street on the west. The total depth of the lot from Roosevelt Boulevard to Bradford Street is about 420 feet. That part of the lot fronting on the Boulevard and extending in a westerly direction to a depth of about 310 feet was when the present owners and tenants acquired the property in 1964, and is still zoned for commercial uses. The remainder of the tract abutting Hartel Avenue, Borbeck Street and Bradford Street, was and is located in a R-5 zoning district in which a new car parking lot is not a permitted use.

The applicant sought to obtain the variance on the ground that that portion of its property within the R-5 zone had characteristics which precluded its use for the permitted residential purposes within the rule of *Forest Hills Borough Appeal*, 409 Pa. 392, 187 A. 2d 166 (1963), or that the characteristics of the area were such that the subject portion of its property had either no value or only a distress value for residential pur-

---

[1] The zoning authorities were asked also to approve and the Board to grant a variance for a seven foot high fence erected by the applicant around the subject portion of its property in violation of a height restriction of the zoning ordinance. This application was also properly disapproved for lack of evidence in justification of its necessity in order to prevent unnecessary hardship. The appellant's brief mentions it only in passing.

poses within the rule of *Peirce v. Zoning Board of Adjustment,* 410 Pa. 262, 189 A. 2d 138 (1963).

The Zoning Board of Adjustment denied the variance and the Common Pleas Court affirmed.[2]

The applicant's evidence fell far short of the mark. That most relevant was the testimony of a real estate expert who admitted that homes could be built where the parking lot is proposed and who on direct examination described the parcel as a "very excellent residential location." His testimony most favorable to the applicant was to the effect that the five or six houses which could be accommodated on the lot would have to sell for $36,000 each in order to assure a profit, and that houses in this price range would be slow selling. Included in the expert's calculation was a value for each lot of $6000, arrived at on the basis of market prices for lots in the immediate vicinity. The case is, therefore, square on the facts with *Crafton Borough Appeal,* 409 Pa. 82, 185 A. 2d 533 (1962), and our recent cases of *Philadelphia v. Earl Scheib Realty Corp.,* 8 Pa. Commonwealth Ct. 11, 301 A. 2d 423 (1973), and *Boulevard Land Corporation v. Zoning Board of Adjustment,* 8 Pa. Commonwealth Ct. 584, 303 A. 2d 234 (1973), all holding that a showing of economic hardship and inconvenience will not support a variance. In *Crafton,* the landowner sought a variance to conduct a gasoline service station business in a residential district. We repeat some of what Mr. Chief Justice JONES wrote in

---

[2] For reasons not explained in the record, the petition for certiorari to the Court of Common Pleas is that of Chrysler Motors Corporation, which is identified therein only as a sublessor and which was not mentioned in the proceeding before the Board. The appeal to this Court was also taken by Chrysler Motors Corporation. Since the City has made no objection, we have considered and decided the case on the merits, not without noting our disapproval of this not untypical disregard for proper procedures in these important zoning cases.

*Crafton, supra,* not only because it is pertinent but also because it instructively draws the line between what may be merely desirable from the applicant's standpoint and therefore not qualifying and what is necessary in order to spare the applicant unnecessary hardship.

"The instant record portrays a property which could be used for residential purposes but could be more gainfully used for the purpose of conducting a gasoline service station. While L. B. Shapero, a real estate developer and the real owner of this property, testified that the 'best use' of this property would be as a gasoline service station, it is obvious that his definition of 'best use' is that use which would be most productive of economic profit. An examination of this record clearly shows that the request for a variance is not based upon any lack of feasibility of the use of this property for residential purposes but rather upon the expectation that the property will be productive of greater financial gain if used as a gasoline service station. This is the type of 'economic hardship' which time and again we have stated does not constitute an 'unnecessary hardship' sufficient to justify the grant of a variance."

We add that the record contains unusually coherent testimony of residents of streets adjacent to and near the applicant's present operation. Some of this testimony tellingly refuted the applicant's expert's opinion that $36,000 homes would be slow selling. Other of this testimony gave ample support to the Board of Adjustment's further conclusion that the grant of the variance would be contrary to the public interest. *See Silverco, Inc. v. Zoning Board of Adjustment,* 379 Pa. 497, 503, 109 A. 2d 147 (1954).

Order affirmed.