Robin Corporation, Appellant, *v.* Board of Supervisors of Lower Paxton Township, Appellee.

Argued December 3, 1974, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Bruce E. Cooper,* with him *Cooper, Friedman & Butler,* for appellant.

*Thomas L. Wenger,* with him *Richard H. Wix* and *Wix and Wenger,* for appellee.

OPINION BY JUDGE KRAMER, February 11, 1975:

This is an appeal filed by Robin Corporation (Robin) from an order of the Court of Common Pleas of Dauphin County, dated February 10, 1974, denying an appeal of Robin from the refusal of the Lower Paxton Township Board of Supervisors (Township) to amend its zoning ordinance under the provisions of Sections 609.1 and 1004 of the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. §§10609.1 and 11004.

In 1966, a predecessor corporation, owned and operated by the same people who own and operate Robin, entered into an agreement to purchase approximately 10 acres of land located in the Township, of which approximately three acres were zoned R-2, permitting apartment house usage, and the balance of which was

zoned R-1,[1] which did not permit such usage. Apartment houses were constructed on that portion zoned R-2. In 1970,[2] the title to the land was transferred to Robin. The record firmly establishes that at the time this property was acquired by Robin and its predecessor, they fully recognized that the seven acres in question in this case were zoned R-1 and that apartment house usage was not permitted. The record further reveals that the owners of the subject land were aware of the fact that the Township's Planning Commission, and others, had recommended that the subject land be rezoned for R-2 usage, and that the Township's Board of Supervisors had refused to so rezone.

On December 12, 1972, Robin sent a letter to the Township challenging the constitutionality of the Township's zoning ordinance *as it applied to the seven acres*

---

1.   The R-1 zoning usage permitted the following:

"In a Low Density Residence District R-1, no building or land shall be used, and no building shall be erected, which is arranged, intended or designed to be used for other than one or more of the following uses:

"Dwelling, single family detached, not more than one main building to each lot.

"Educational, religious or philanthropic use, excluding hospitals, sanatoriums [sic] or correctional institutions.

"Electrical substations.

"Fire stations.

"Library.

"Municipal recreational use.

"Professional offices.

"Telephone central office.

"Accessory uses customarily incidental to the uses permitted, including private garages. The keeping of pigeons and horses shall not be considered as an accessory use, and is expressly forbidden in this zone."

2.   Although the record plainly states that Robin took title in 1970, apparently the records in the Recorder of Deeds Office indicate that title was transferred on January 21, 1971. The difference in these dates, however, does not affect the result of this case.

*of Robin zoned R-1,* as being confiscatory, requested a curative amendment to rezone the premises R-2, and suggested that, in the event the land was rezoned as suggested, Robin would develop the property into apartment house usage in conformity with the R-2 zoning requirements. It should be noted here that the letter was not accompanied by any "plans or other materials" as required by section 1004 of the MPC, 53 P.S. §11004.[3] It should also be noted that, at the same time, counsel for Robin also submitted a challenge on behalf of John T. Bonitz, the owner of 21.25 acres adjoining the Robin tract. The two cases were consolidated for hearing. Bonitz, however, did not take an appeal from the adverse ruling of the Court, and, therefore, the issues there involved are not before us.

Hearings were held before the Board of Supervisors of the Township, after which the Board issued its adjudication containing detailed findings of fact, discussion and a conclusion of law that Robin had "failed to sustain its burden of showing the necessity of a rezoning of its land." Both Robin and Bonitz took an appeal to the lower court, which received no additional testimony or evidence. The court below dismissed the appeal of Robin for the reasons that Robin was fully aware of the zoning of the subject tract at the time it acquired title, that the record submitted to the court substantiated the findings of the Board that the property could be used for some of the purposes permitted by the R-1 zoning classification, and that Robin had failed to prove that the existing R-1 classification bears no substantial relation to the public welfare.

On appeal to this Court, Robin contends that the

---

3. Section 1004(2)(c) provides: "(c) The request *shall* be accompanied by plans and other materials describing the use or development proposed by the landowner in lieu of the use or development permitted by the challenged ordinance or map. . . ." (Emphasis added.)

Board committed an abuse of discretion in refusing to make the requested rezoning of its land. Recently this Court had occasion to pass upon its scope of review on appeals arising out of section 1004 of the MPC. *See Ellick v. Board of Supervisors of Worcester Township,* — Pa. Commonwealth Ct. —, 333 A. 2d 239 (1975). We there noted that where the court of common pleas makes its own findings of fact and conclusions of law, our scope of review is to determine whether the court abused its discretion or committed an error of law. We noted in *Ellick,* however, that the court below, by virtue of section 1010 of the MPC, 53 P.S. §11010, need not necessarily make its own findings of fact; and where the governing body of the municipality has made its own findings of fact, it is the task of this Court to determine whether the governing body abused its discretion or committed an error of law. In the instant case, the governing body did make its own findings of fact, and the court received no additional testimony or evidence and passed upon the governing body's adjudication. Therefore, we look to the adjudication of the Board of Supervisors. *See Clawson v. Harborcreek Zoning Hearing Board,* 9 Pa. Commonwealth Ct. 124, 304 A 2d 184 (1973). A further refinement of our scope of review is found in section 1010 of the MPC, 53 P.S. §11010, which states in pertinent part: "If the record below includes findings of fact made by the governing body, board or agency whose decision or action is brought up for review and the court does not take additional evidence or appoint a referee to take additional evidence, the findings of the governing body, board or agency shall not be disturbed by the court if supported by substantial evidence."

Substantial evidence is that evidence which a reasonable man acting reasonably might have utilized in reaching the decision made. *See A. P. Weaver and Sons v. Sanitary Water Board,* 3 Pa. Commonwealth Ct. 499, 284 A. 2d 515 (1971).

In their briefs the parties evidence a fundamental disagreement over whether this case should be treated as a "variance case" is disguised form, and we must admit that a difficult problem of statutory interpretation is presented by the instant procedural facts. The problem is created by the extremely broad language of section 1001 of the MPC, 53 P.S. §11001, which reads: "The proceedings *set forth in this article* [Article 10] shall constitute *the exclusive mode* for securing review of any ordinance, decision, determination or order of the governing body . . . its agencies, or officers." (Emphasis added.)

Our problem is the determination of the precise effect this section (enacted in 1972) has on the traditional method of challenging land use restrictions through a request for a variance. Nowhere in Article 10 of the MPC, 53 P.S. §11001 et seq., are variances mentioned.

Robin argues that it cannot conform to the mandated R-1 uses because of the peculiar topography of its land, and the R-1 limitations are thus "unreasonable", rendering its activities on its land unprofitable, and the restriction thus "confiscatory." The heart of a confiscation argument in a zoning case is that a land use restriction is "unreasonable" in that it deprives the landowner of any reasonable use of his land, without compensation. Robin reasons that this is tantamount to a "taking" without due process of law. *See Goldblatt v. Town of Hempstead,* 369 U.S. 590, 594 (1962) ; *Pennsylvania Coal Company v. Mahon,* 260 U.S. 393, 415 (1922) ; *Reibel v. City of Birmingham,* 23 Mich. App. 732, 179 N.W. 2d 243 (1970) ; *City of El Paso v. Donohue,* 344 S.W. 2d 185 (Court of Civil Appeals of Texas, 1961).

This line of argument is precisely the same format used in many variance cases, although Robin says in its brief that "the issue before the court was not the granting of a variance, but rather the testing of the constitutionality of the zoning ordinance *as it applied to the*

*tract."* (Emphasis added.) Robin proceeded under section 1004 of the MPC and did not request a variance.

We observe that variances developed in the law of zoning because, in their absence, some oppressive restrictions would be the equivalent of a taking without due process of law, and, thus, confiscatory. Under the definition of "confiscation" used above, a set of facts which would establish a "confiscation" would also establish a right to a variance, although conceivably the converse would not necessarily be true.[4] The relationship between variances and confiscation is delineated in Ryan, *Pennsylvania Zoning Law and Practice,* §6.1.7, where the author observes that "[i]f a zoning ordinance is valid in general, but confiscatory as applied to a specific property, the traditional remedy has been to grant a variance."

From the above it becomes clear that we must initially determine whether Robin was correct in filing its "substantive challenge" pursuant to MPC section 1004, instead of requesting a variance. We conclude that the procedure followed by Robin was incorrect.

---

4. In *Township of Neville v. Exxon Corp.,* 14 Pa. Commonwealth Ct. 225, 322 A. 2d 144 (1974), we stated that sections 609.1 and 1004 of the MPC are not necessarily strictly limited to facial attacks on the constitutionality of a zoning ordinance. In *Neville,* the landowner was faced with an unusual situation, where he could not seriously contend that his land was subject to the peculiar hardship required for a variance under section 912 of the MPC, yet his land was burdened by a restriction which was alleged to be "confiscatory" by virtue of "irrational and arbitrary" planning which ignored the reality of land use patterns. The claim, if supported, would have had merit. *Neville* is thus distinguishable from the instant case by virtue of the cause of the alleged "confiscation," even though in *Neville,* as in the instant case, relief was sought from a hardship that was allegedly imposed on a specific tract. Our statement in *Neville* regarding the availability of the curative amendment procedure in that case thus represents an interpretation which is still viable in light of the holdings we make in the instant case.

Even though section 1001 of the MPC provides that Article 10 (which includes section 1004) shall be the "exclusive mode" for reviewing land use restrictions, we must look to the entire context of the statute to determine the precise effect of Article 10 on pre-existing zoning practice. At least two other sections of the MPC make specific reference to variances. In section 912, 53 P.S. §10912 (enacted in 1968), the function of the zoning hearing boards in variance cases is described. In section 914, 53 P.S. §10914, dealing with parties appellant before the hearing boards, specific references to section 912, and to variance requests are made. *Section 914 was itself a part of the same 1972 amendments which included the new Article 10.* It would, therefore, be improper for us to imply a repeal of previous references to variances and variance practice, and we must assume that this traditional method of challenging zoning restrictions is still viable.[5] This comports with our recent statement in *Ellick, supra,* that the general principles of law pertaining to zoning, and particularly those relating to variances, have not changed as a result of the 1972 amendments to the MPC.

We are thus led to a consideration of whether "substantive challenges" under section 1004, and requests for variances are alternative rather than mutually exclusive remedies. In resolving this question, we note that section 1004(1) reads as follows: "(1) A landowner who, on substantive grounds, desires *to challenge the validity of*

---

5. At this point, we note the applicability of the Statutory Construction Act of 1972 (Act), 1 Pa. C.S. §1501 et seq. Section 1922(2) of the Act provides a presumption "[t]hat the General Assembly intends the entire statute to be effective and certain," and section 1933 of the Act provides that "[w]henever a general provision in a statute shall be in conflict with a special provision in the same . . . statute, the two shall be construed, if possible, so that effect may be given to both. If the conflict . . . is irreconcilable, the special provisions shall prevail and shall be construed as an exception to the general provision."

*an ordinance or map* or any provision thereof which prohibits or restricts the use of development of land in which he has an interest shall submit the challenge either: (a) To the zoning hearing board for a report thereon under section 910 or 913.1, or (b) To the governing body together with a request for a curative amendment under section 609.1." (Emphasis added.) (Footnotes omitted.)

We believe that section 1004 was intended to apply to a situation such as that found in *Casey v. Zoning Hearing Board of Warwick Township,* — Pa. —, 328 A. 2d 464 (1974), where the validity of an entire zoning ordinance was challenged through an allegation of exclusionary zoning. In *Casey,* the Supreme Court, through Justice EAGEN, said: "Once a zoning ordinance is found to be constitutionally defective, the judgment invalidates the entire ordinance, not merely the zoning of a particular tract of land."

The Court went on to say, in a footnote to its opinion, that "[t]his case must be distinguished from the case in which the challenger is merely contesting the zoning of his own tract of land, and only seeking to have the court declare the zoning of his tract invalid."

In this latter case (as in the instant case), allowing the landowner to proceed pursuant to section 1004 would, as a practical matter, result in the placing of a great and undue burden on municipal governing bodies. If a landowner who has what is essentially a variance claim can short-cut the review process, bypass the zoning hearing board, and go directly to the governing body for a disposition, the usefulness and legislatively intended function of local hearing boards would be greatly derogated.[6] We do not believe such was the legislative intention behind Article 10 of the MPC, and, had it been the Legislature's desire to effect such a radical modification of exist-

---

6. See Ryan, *Pennsylvania Zoning Law and Practice,* §§9.4.6 (4) and 9.5.2.

ing practice, it would have been much more specific in its choice of statutory language.

Fully cognizant of the fact that there is considerable tension between different sections of the MPC, we are constrained to hold that (1) the law of variances is still viable and remains unchanged under Article 10 of the MPC; and (2) section 1004 "substantive challenges" and requests for variances are mutually exclusive remedies, a request for a variance being required whenever a landowner desires to challenge the zoning of his particular tract through a claim which, if established on the record, would warrant the granting of a variance.

Turning now to the particular facts of the instant case, we note that Robin has not requested a variance, and has improperly proceeded under section 1004. Because of the uncertainty which we sense surrounding Article 10, however, and because we do have before us a sufficient record and argument, we will deal with the merits of a variance claim for the benefit of the parties.[7] Not surprisingly, many of the cases cited to us are variance cases, and, regardless of Robin's description of its contention as a "confiscation" argument, we find that the parties would be advancing the same propositions if Robin had requested a variance originally.

Robin's argument on the merits reduces itself to a claim that the R-1 zoning classification does not permit the land in question to be developed to its highest and best use from an economic standpoint. The record is replete with testimony concerning how the land in ques-

---

7. We point out that our preliminary holdings in this case deal strictly with the proper procedure to be followed in seeking review of zoning restrictions. In light of the discussion above relating the concept of confiscation to requests for variances, it is clear that even if Robin had acted correctly in proceeding under MPC section 1004, the substantive principles governing the granting of relief would closely parallel, if not be identical with, the variance law applied in the portions of this opinion immediately following this footnote.

tion could best be used, whether the tract "should" be re-zoned R-2, and whether enlightened planning would strongly suggest a rezoning along the lines desired by Robin. Even though a strong case for legislative action may have been made by Robin, unfortunately, none of this evidence entitles Robin to a judicially imposed relaxation of the use restriction. To obtain a variance, a challenging landowner must prove considerably more than the prohibition of a property's most profitable use. We recognize that all zoning involves a "taking" in the sense that the owner is not completely free to use his property as he chooses, but it is well-established that such a "taking" is not invalid, and does not entitle the owner to relief, unless the owner's rights have been *unreasonably* restricted. *See Village of Euclid v. Ambler Realty Company*, 272 U.S. 365 (1926) ; *Marple Township Appeal*, 430 Pa. 113, 243 A. 2d 357 (1968).

A landowner in Robin's position, bears the burden of proving that none of the R-1 uses can reasonably be pursued. *Marple Township Appeal, supra; Chrysler Motors Corporation v. Zoning Board of Adjustment, City of Philadelphia*, 13 Pa. Commonwealth Ct. 363, 319 A. 2d 429 (1974). Robin's own witness admitted that it was feasible to develop the Robin tract for professional offices (one of the permitted uses).

After a careful review of the record, we conclude that there is sufficient evidence to sustain the findings of fact and conclusions of the Board of Supervisors. It is not for us to effect a judicial reclassification of the property in question, and the matter of what zoning plan will best serve the citizens of Lower Paxton Township is not subject to review by this Court. We must, therefore, affirm the lower court.

———

CONCURRING OPINION BY JUDGE CRUMLISH, JR. :

I agree with much of what is said by the majority, and I concur in the result reached inasmuch as Appellant

has clearly failed to carry its burden of proving that the present zoning denies it any reasonable use of its property under either a variance or constitutional theory. To avoid any future misinterpretation or misapplication of this decision, however, I must reiterate what I consider to be our narrow holding here.

The 1972 amendments to the Pennsylvania Municipalities Planning Code[1] (MPC), adding provisions for an application for a curative amendment under Sections 609.1 and 1004, 53 P.S. §§10609.1, 11004, establish two *mutually exclusive* remedies available to a landowner in the context of an alleged "confiscation" of his property. The utilization of each necessarily depends upon the particular *cause* of the alleged confiscation. Where the confiscation is allegedly due to unique physical conditions or circumstances, such as the topography of the property involved, thus creating an unnecessary hardship by the strict application of the zoning ordinance, the landowner's remedy is to apply to the zoning board for a variance under Section 912 of the MPC, 53 P.S. §10912. Where, however, the property allegedly confiscated does not suffer from unique physical conditions or circumstances, or would not otherwise qualify for a variance under Section 912 due to the nature of the change in zoning requested, the landowner's only remedy is to apply for a curative amendment under Sections 609.1 and 1004 of the MPC. *Township of Neville v. Exxon Corp.*, 14 Pa. Commonwealth Ct. 225, 322 A. 2d 144 (1974). In the instant case, unique topographical conditions of Appellant's property allegedly resulted in a confiscation. The zoning board would have had jurisdiction and the power to grant a variance under Section 912, and thus Appellant erred in proceeding for a curative amendment. It cannot be overemphasized, however, that the instant holding in no way limits our decision in *Township of Neville v. Exxon*

---

1. Act of July 31, 1968, P.L. 805, *as amended* by the Act of June 1, 1972, P.L. —, No. 93, 53 P.S. §§10101 et seq.

*Corp., supra,* that Sections 609.1 and 1004 are the appropriate means of testing the constitutionality of a zoning restriction on its face as well as applied to a specific property where a variance is unavailable due to the cause of the alleged confiscation or the nature of the rezoning requested.