Harold A. J. Hauser, Jr., and Jean M. Hauser, Appellants, *v.* Borough of Catasauqua Zoning Hearing Board, Appellee.

314

Argued April 4, 1975, before Judges KRAMER, WILKINSON, JR., and BLATT, sitting as a panel of three.

*James N. Diefenderfer,* for appellants.

*Charles J. Fonzone,* with him *Martin J. Karess* and *Walker, Thomas, Karess, Lipson & Ziegler,* for appellees.

OPINION BY JUDGE BLATT, July 17, 1975:

This is a zoning appeal taken by Harold A. J. Hauser and Jean M. Hauser (landowners) from the Court of Common Pleas of Lehigh County which affirmed the Zoning Hearing Board (Board) of the Borough of Catasauqua (Borough). The Board had held that the landowners' application to convert a pre-existing nonconforming use should be denied in part and granted in part.

The landowners' property, located on both sides of Lehigh Street in the Borough, was originally zoned in

June of 1962 when the Borough adopted a zoning ordinance. At that time the property was being used as a coal yard, and as such was permitted to continue as a nonconforming use. In 1966, Robert Jones, then the occupant, applied to change that nonconforming use to another nonconforming use as an "automotive body and upholstery shop and a used car lot." The Board, after a hearing, approved the change subject to certain restrictions. The property was operated thereafter as "Jones' Auto Center." Subsequently, in 1970, George Schlacter applied to change the use of the property once more so that it could be utilized for "office, storage and garages." This was another nonconforming use of the premises, which the Board approved in 1971.[1] Schlacter then used the premises during the daytime hours in connection with a roofing and general contracting business, "G&S Home Improvement Company." During the evening hours, however, the property continued to be used for auto repair work, although the record is unclear as to whether such work was being done commercially as part of the business or merely as a hobby.

The landowners involved in the present appeal purchased the property in June of 1973 and shortly thereafter sought the approval of the Board to use the premises as a warehouse and automobile and truck repair shop as well as for the parking and storage of motor vehicles, including trucks. At the hearing before the Board, Mr. Hauser described the nature of the motor vehicle repair business which he proposed to conduct on the premises. He stated that ninety percent of his work would be done on the road in response to emergency phone calls for which his employees would be available on a 24-hour per

---

1. Jones and Schlacter were granted variances by the Board. Our reading of the record, however, indicates that the Board was really considering changes of nonconforming uses in both cases. The Board's use of the word "variance" to describe the remedy it was affording was, therefore, inappropriate.

day basis. The other ten percent of the work, which would have to be done in a shop, would be conducted on the property here concerned from 8:00 A.M. to 5:00 P.M. five days a week. Most of the work would involve the repair of trucks, although Hauser did state that he might also work on automobiles at times. Hauser said that he would employ two full-time and four part-time employees and would utilize six three-quarter-ton service trucks in the business. The building located on the premises contains garages with overhead doors and there is various repair equipment inside, including an overhead lift. This equipment was apparently built in part and used by the preceding occupants.

Following a hearing, the Board decided that the present landowners should be permitted only to continue utilizing the subject premises as a "warehouse and storage facility" and to continue on-site vehicle repairs incidental to the business. The parking request was also granted. They were, however, denied permission to conduct a truck and automotive repair business. The lower court affirmed and the landowners now appeal to this Court.

Our scope of review where the lower court has not taken additional evidence is to determine whether or not the Board has committed a manifest abuse of discretion or an error of law. *Lower Providence Township v. Ford,* 3 Pa. Commonwealth Ct. 380, 283 A. 2d 731 (1971).

The landowners contend that the Board abused its discretion "in denying the change of a prior nonconforming use for an automotive repair facility to the applicants' requested nonconforming use for a truck repair facility." They apparently rely, therefore, on the use permitted to Robert Jones who operated the automotive body and upholstery shop and the used car lot, and they argue that his right to perform those activities, would entitle them to perform the activities which they now seek to conduct. This argument is obviously premised on the as-

sertion that the use which was permitted for Jones is the same as the existing nonconforming use. We cannot accept such a premise, however, for when Schlacter was permitted in 1971 to change the nonconforming use to that of an "office, storage and garage" facility, the right to use the property in the manner permitted to Jones was thereupon lost. The right to change nonconforming uses does not include the right to retain an existing nonconforming use while adding an entirely new nonconforming use. *Horninger v. Bethlehem Township Police Association,* 8 Pa. Commonwealth Ct. 85, 301 A. 2d 433 (1973). This view is consistent with the policy of the law to restrict nonconforming uses closely and to construe strictly any provisions in zoning ordinances which provide for the continuance of nonconforming uses. *Hanna v. Board of Adjustment,* 408 Pa. 306, 183 A. 2d 539 (1962). In granting Schlacter the right to use the premises for "office, storage and garages" in 1971, the Board gave no indication that it intended him to be able to retain as well the rights which Jones had enjoyed. Nor have we found any authority under the zoning ordinance then in effect which would have allowed Schlacter to retain the auto repair use of his predecessor occupant, Jones.

We must conclude, therefore, that the use of the premises for auto repair work conducted during the evening hours after 1971 was unlawful. The present landowners cannot, therefore, acquire the right to a nonconforming use of the premises for that purpose by virtue of Schlacter's unlawful use. An existing illegal use cannot form the basis for the establishment of a valid nonconforming use. *Commonwealth v. Cieslak,* 179 Pa. Superior Ct. 441, 115 A. 2d 418 (1955). The present landowners must derive whatever nonconforming use rights they have from Schlacter's *lawful* use of the premises as an "office, storage and garage" facility.

Section 5.404 of the Borough Zoning Ordiance provides for a change of nonconforming uses according to the following terms:

"*Change of Use*—A nonconforming use or structure may be changed to another nonconforming use or structure only if such change is more appropriate to the character of the District in which it is located as determined by the Board."

The landowners contend that this provision does not set definite enough standards which can be applied by the Board uniformly, and, if we were to interpret the provision as granting to the Board unlimited discretion in determining what changes are "more appropriate," we would have to conclude that it was an unconstitutional delegation of legislative power. As our Supreme Court stated in *Archbishop O'Hara's Appeal*, 389 Pa. 35, 47-48, 131 A. 2d 587, 593-594 (1957):

"A fundamental principle of our constitutional law is that the power conferred upon a legislature to make laws cannot be delegated by that branch of government to any other body or authority: Cooley, Constitutional Limitations, P. 224 (8th ed.); United States v. Shreveport Grain & Elevator Co., 287 U. S. 77, 53 S. Ct. 42. . . . While the legislature cannot delegate the power to make a law, it may, where necessary, confer authority and discretion in an administrative tribunal in connection with the execution of the law: Belovsky v. Redevelopment Authority, 357 Pa. 329, 342, 343, 54 A.2d 277. However, such authority and discretion may not be conferred by the legislature except under the limitations of a prescribed standard or standards under which the authority and discretion are to be exercised: U. S. v. Chicago, Milwaukee, St. Paul & Pacific Railroad, 282 U. S. 311, 51 S. Ct. 159, . . . .

"McQuillin, Municipal Corporations (3rd Ed.), Vol. 8, Sec. 25.62, p. 137 states: 'The fundamental

rule that an ordinance must establish a standard to operate uniformly and govern its administration and enforcement in all cases, and that an ordinance is invalid where it leaves its interpretation, administration or enforcement to the unbridled or ungoverned discretion, caprice or arbitrary action of the muncipal legislative body or of administrative bodies or officials, is fully applicable to zoning ordinances. In other words, zoning ordinances and regulations should establish uniform rules to guide administrative officers in applying them. The rule merges with that of definiteness and certainty; zoning restrictions must be clear as a rule of law and not left to proof." (Citations omitted.)

Nevertheless, in *O'Hara,* which dealt with a Board of Adjustment's exercise of discretion in granting special exceptions as well as in *Mutimer Company v. Wagner,* 376 Pa. 575, 103 A.2d 417 (1954) which concerned, as does the case at hand, a Board's authority to permit a changed nonconforming use, the ordinances could be interpreted so that the needed definiteness would be supplied by reference to provisions other than the one which gave the Board its authority to approve or disapprove proposed uses. Under the ordinance which we are presently considering, therefore, the Board can and must compare the zoning districts in the Borough which would permit the present nonconforming use to the districts which would permit the proposed nonconforming use for only a reference to the ordinance's own established treatment of those two uses will enable that Board to make an objective determination as to whether or not the proposed use is "more appropriate to the character of the District in which it is located."

Here the Board failed to consider how the ordinance classifies the present nonconforming use, as compared to the proposed nonconforming use. Instead, the Board gave as its reason for denying the proposed use, that it would

cause "traffic congestion" and "additional noise and clammer (sic)" in the area. In the absence of some provision in the ordinance to the effect that such considerations will be determinative, the Board cannot properly deny the proposed use on that basis.

The subject property is currently located in two zones which are divided by Lehigh Street. The ground on the east side of the street is located in an R-2 Medium Density Residential district while that on the west side is located in an S-1 district which allows certain public services. These districts are apparently of a less intensive character than the commercial zones which would permit both the existing and the proposed nonconforming uses.[2] The proposed motor vehicle repair business use clearly falls within the "Commercial" use class according to the terms of the ordinance, but we are unable to state with any certainty whether the prior occupant's use in connection with his contracting business should be considered as an "office" use or as a "warehouse" use. If it was the former, it would have fallen within the "Community Retail and Service" use class, and it would be permitted in a less intensive district than the "Commercial" use. The proposed use would not, therefore, be "more appropriate" to the character of the districts in which the Hausers' land is located. On the other hand, if the prior occupant's use were considered to be that of a "warehouse," it would have fallen within the "General Industrial & Heavy Commercial" class, and would have been permitted in a more intensive district than the "Commercial" use. The proposed use would, therefore, be "more appropriate" to the character of the districts in which the Hausers' land is located. The record here

---

2. Clearly the R-2 residential district is of a less intensive character. On the other hand, the S-1 district has a somewhat amorphous character and is not necessarily less intensive by definition. The Board, however, seemed to treat this S-1 district as less intensive.

does not describe the extent of the activities which were permitted to the previous occupant with enough clarity to enable us to determine how the present zoning ordinance would have classified his activities. Under these circumstances, therefore, we must remand the case to the Board so that it can make that determination and thereby decide whether or not the Hausers' proposed use would be "more appropriate" in light of the entire ordinance.

We will not consider the landowners' constitutional challenge to the appropriateness of the zoning classifications which the ordinance establishes. Section 1004 of the Municipalities Planning Code, Act of June 1, 1972, P.L.    , No. 93, 53 P.S. §11004, describes the exclusive method by which a landowner may launch such a constitutional challenge to the validity of an ordinance. *See Robin Corporation v. Board of Supervisors of Lower Paxton Township,* 17 Pa. Commonwealth Ct. 386, 332 A.2d 841 (1975). The landowners here have failed to follow these procedures.

We, therefore, remand the record to the lower court with the instruction that the record be further remanded to the Zoning Hearing Board for further consideration as to whether or not the application of Harold A. J. Hauser and Jean M. Hauser should be approved in the light of this opinion.