## Atlantic Richfield Company v. Harrisburg Zoning Hearing Board

*Victor Delle Donne,* for appellant.
*Michael Solomon,* for appellee.

DOWLING, *J.,* April 29, 1981—Food and fuel, the prime participants in our unprecedented inflationary spiral, are locked in a territorial conflict which, impinging on certain zoning restrictions, necessitates a judicial delineation. Apparently feeling that "fill her up" should apply to tummy as well as tank, the Atlantic Richfield Company seeks to expand its service station at Second and Verbeke Streets in the city of Harrisburg into a mini-market. The zoning administrator denied its application for a permit. An appeal from his decision was denied by the zoning hearing board and the matter is now before this court.

Before pumping out an adjudication on the merits, we must first see if the zoning hearing board has checked in with a timely decision. The board conducted its hearing on September 10, 1980 at which time the presentation of testimony was concluded. By letter dated September 25, 1980 the zoning hearing board, at a regularly scheduled public hearing without any additional testimony being offered, had rendered an unanimous decision deny-

ing the appeal and stating that a copy of the findings of fact and conclusions of law would be forwarded as soon as received from the board's counsel. On October 27, 1980, 47 days after the hearing of September 10, the board rendered a full opinion including detailed findings of fact and a complete discussion of the relevant issues.

Appellant, Atlantic Richfield, takes the position that the board by not rendering a decision within 45 days is in violation of the provisions of section 908(9) of the Pennsylvania Municipalities Planning Code[1] which states:

"The board . . . shall render a written decision . . . within forty-five days after the last hearing before the board. . . . Where the application is contested or denied, each decision shall be accompanied by findings of fact and conclusions based thereon together with the reasons therefor. . . . Where the board fails to render the decision within the period required by this subsection . . . the decision shall be deemed to have been rendered in favor of the applicant. . . ."

That this provision is mandatory and must be strictly complied with is the holding of a series of Commonwealth cases; see Quality Food Markets, Inc. v. Zoning Hearing Board of South Lebanon Township, 50 Pa. Commonwealth Ct. 569, 413 A. 2d 1168 (1980), and more recently by per curiam decision of this court, Khan v. Zoning Hearing Board of the City of Harrisburg, 102 Dauph. 286 (1981).

It is the position of appellee, the zoning hearing board of the city, that the zoning administrator's letter of September 25 which, of course, was well

1. Act of July 31, 1968, P.L. 805, as amended, 53 P.S. § 10908(9).

within the period, constituted a written decision and hence compliance with the Pennsylvania Municipalities Planning Code. It had been held that the 45 day requirement is satisfied when the parties are notified of the decision even though the decision has not been accompanied by findings of fact, an opinion or any explanation of the results: A.Z.J.Z., Inc. v. Township of Springfield, 36 Pa. Commonwealth Ct. 161, 387 A. 2d 675 (1978). Atlantic Richfield, however, argues that the statute requires a written decision from the board and that the letter of September 25 is from the zoning administrator. Appellee, at oral argument, took the position that the zoning administrator was in fact, the secretary of the board, although there is nothing in the record to so indicate. We need not decide whether the letter from the zoning administrator is notice from the board because there is another more certain basis for finding compliance with the 45 day requirement. The 45th day fell on a Saturday and under the Statutory Construction Act of 1972[2] when the last day of any period of time referred to in any law falls on a Saturday or Sunday, those days are to be omitted from the computation. Thus, the formal written decision of the board being sent out on Monday, October 27, is in fact within the required 45 days.

The oil company argues that since the statute requires the decision "within 45 days" the exclusion of Saturday and Sunday should not apply. It cites as authority J.A. Puleo & Sons, Inc. v. Borough Council of Phoenixville, 7 Pa. Commonwealth Ct. 248, 298 A. 2d 658 (1973). We do not read this decision as supporting appellant's position. In Puleo the court was dealing with section 508 of the Pennsylvania Municipalities Planning Code which provided that

2. 1 Pa.C.S.A. §1908.

in dealing with applications for plot approval, the governing body shall render its decision and communicate it to the applicant no later than 40 days after the application was filed and furthermore that the decision must be communicated to the applicant no later that five days following the decision. In that case the governing body attempted to combine the two periods and to argue that notice within 45 days was sufficient. The court pointed out that the mandated notice within 40 days and the provision for five days did not enlarge this period but was simply applicable when the decision was made soon after the submission of the application. This is a completely different situation from the instant case.

Moving on to the merits our scope of review, where as here no additional testimony was taken, is limited to a determination of whether the board on the record before it committed an error of law or abused its discretion: Harper v. Zoning Hearing Board of Ridley Township, 21 Pa. Commonwealth Ct. 93, 343 A. 2d 381 (1975).

The zoning hearing board made 19 findings of fact which from an examination of the record are fully supported by the testimony. It based its denial on the principal grounds that to permit Atlantic Richfield to operate a grocery store would add a second nonconforming use to the property. Since 1923 when the gasoline and service station began operation, the area has become more restrictive and is now classified an RPO zone which permits only residential and professional offices. Following marketing studies which identified this location as desirable as a convenience store, appellant proposed to remove the auto lifts, close off the service bay, delete the service and repair functions entirely

and convert the building into a 24 hour mini-market having only self-service gas pumps.

The applicant contends that its proposal is permissible under The Codified Ordinances of Harrisburg which provide that a nonconforming use may continue as the "same"[3] use or be "expanded"[4] into other portions of the building for increased trade. We cannot see the operation of the proposed grocery store as a continuation of the same use. The findings of fact disclose that since its inception, this station has been operated as a traditional full-service gas station. While there have been incidental sales in the office portion of the building of such items as cigarettes, soda, candy, flashlight batteries, aspirin and a limited supply of snacks, they were merely offered as a convenience for motorists and can be viewed only as incidental to the primary purpose of providing gasoline and auto repairs and service. While you can buy a hot dog and a cup of coffee at Beaver Field, it's still a football stadium and not a restaurant. In Reinert v. Weisenberg Zoning Board, 48 Pa. Commonwealth Ct. 519, 410 A. 2d 915 (1980), an applicant who "merely worked on and tinkered with his own automobiles and those of his friends without charge" was not permitted to claim this nonconforming use entitled him to establish a complete automobile repair shop. If more is needed, one need only consider the extensive physi-

---

3. Article 1325.01(a)(4). "A nonconforming use or other portion thereof shall only be continued as the same use, except that such nonconforming use or any portion thereof may be changed to any use specifically permitted by the regulations of the zone in which located."

4. Article 1325.01(b)(3). "A nonconforming use of a portion of a structure or building may be expanded or extended into any other portion of the structure or building to provide for increased trade or business or industry."

cal alterations proposed for the conversion of the property to a grocery store.

The applicant also asserts that its proposal is simply an expansion of a previous nonconforming grocery use. This argument would be attractive if the use as an exisiting grocery store had been established. Appellant did present testimony that 15 percent of its current sales are of non-gasoline items, although inspection by the zoning officer throws this into serious doubt. Nor can we accept appellant's projection that a full grocery store line as it contemplates would result only in a 22 percent total sales ratio of non-gasoline items. The oil industry is not noted for its philanthropic gestures and one can hardly imagine all this bother for an anticipated 7 percent increase in sales.

The past sales of non-gasoline items does not, under the evidence in this case, justify or create a presumption that they were always part and parcel of the primary use. It appears that they were really incidental sales, made in the fashion of the old time gasoline stations, which are now being transformed into an argument that the grocery store was always there, you just couldn't see it. The policy of the law is to restrict closely nonconforming uses and to strictly construe provisions which provide for their continuance: Hauser v. Borough of Catasauqua Zoning Hearing Board, 20 Pa. Commonwealth Ct. 313, 341 A. 2d 566 (1975).

And finally a nonconforming use cannot be expanded unless applicant's proposed use will not be detrimental to or tend more greatly to alter the character of the neighborhood (Article 1325.01(b) and 1327(a)). The zoning hearing board, acting with proper discretion, determined that the introduction of a convenience grocery store would defeat the recent efforts to upgrade the neighborhood as

exemplified by the RPO zoning change. The board cited substantial rehabilitative and restorative efforts being undertaken in this district. The existence of these efforts combined with the neighboring 3rd Street corridor of various "commercial" enterprises including two grocery stores obviates the need for a retail enterprise in this particular neighborhood.

The board was also justifiably concerned about the safety, health and welfare of the citizens. It found that existing traffic patterns on North Second Street create a significant flow of automobiles particularly "circuit" riders who parade around this area and would be further attracted by the presence of an all-night convenience store.

For all the above reasons, we feel that the board committed no abuse of discretion and no error of law; hence, no mini-market.

Accordingly, we enter the following

## ORDER

And now, April 29, 1981, the appeal of the Atlantic Richfield Company is dismissed.