Robert I. Malakoff and Carole E. Malakoff, his wife, Appellants *v.* Zoning Board of Adjustment of The City of Pittsburgh et al., Appellees.

Argued October 6, 1983, before Judges CRAIG, MAC-PHAIL and DOYLE, sitting as a panel of three.

*William R. Grove, Jr., Hollinshead and Mendelson,* for appellants.

*Kathryn E. H. Katsafanes,* with her *D. R. Pellegrini,* City Solicitor, for appellees.

*Mark I. Baseman,* with him *Jeffery B. Markel, Berkman, Ruslander, Pohl, Lieber & Engel,* for intervenors, Association for Retarded Citizens, Allegheny Chapter.

OPINION BY JUDGE CRAIG, November 3, 1983:

This zoning appeal by objecting neighbors, Mr. and Mrs. Robert Malakoff, questions an order of the Court of Common Pleas of Allegheny County which affirmed a special exception allowed by the Pittsburgh Zoning Board of Adjustment under an ordinance section al-

lowing a change of use from one nonconforming use to another nonconforming use no more detrimental. By granting the special exception, the board approved the change-of-use aspect of a nonprofit corporation's proposal to replace office use in its building with occupancy for a photographic studio use.

The objectors ask us to reverse the decision on the ground that the approval actually entails a change from what was a conforming use, in the R-4 district here involved, to a nonconforming use acceptable only in a less restricted district. In addition to attacking the approval of the change of use, the objectors contend that the proposal also requires a separate special exception approval for rehabilitation of a nonconforming structure.

Under Pittsburgh's zoning ordinance, the R-4 district is primarily a residential district for single and multiple dwellings. With respect to that district, section 937.02 also lists "kindergarten" as a permitted use, and section 937.05(b) makes cross-reference to the special exception provisions in chapter 909 of the zoning ordinance.

Under special exception section 909.06, subsection (b)(5) expressly allows the board to grant a change of a nonconforming use in a nonconforming structure to another nonconforming use, determined by the board to be no more detrimental to the neighborhood. Subsection (b)(17) authorizes the board to grant a separate special exception as to the rehabilitation of a nonconforming structure, subject to explicit limitations. As might be expected, the ordinance's definition section, section 903.02(n), defines "nonconforming structure" as "a structure or portion thereof other than a sign . . . erected or altered for a use that does not completely conform to the use regulations applicable," while "nonconforming use" refers to "a use of a structure or land other than a sign. . . ."

180

The property has had a history of special exceptions, as follows:

In 1971 the board granted a special exception authorizing a change from a nonconforming use —auto parts—to allow use of the building for kindergarten and related offices, characterized by the board as "another nonconforming use" (then indicating the district to be R-5, in which section 941.02(a)(5) also listed a kindergarten as a permitted use).

In 1979, the board granted another special exception for change of a nonconforming use to another nonconforming use, allowing a change to offices for the nonprofit corporation. The board decision indicates that the actual use at that time had become one of industrial training through cardboard box production, apparently an illegal use, the cessation of which was required by the board.

In 1982, in the present case, the board again granted a special exception on the basis of a change of a nonconforming use to another nonconforming use, to allow the change from offices to photographic studio, as noted above.

### Prior Use Nonconforming or Conforming

As to the objectors' contention that the board's final 1982 action was not authorized because it involved a change from a *conforming* use to a nonconforming one, we agree with the analysis of Administrative Judge PAPADAKOS of the common pleas court. The actual use and official use status of the property, immediately before the present case, has been use as offices, which are *not* permitted in the R-4 district. Hence, the change is from one nonconforming use to another, as allowed by subsection (b)(5). Moreover,

the R-4 provisions, by making a cross-reference to the subsection (b)(5) special exception, do not thereby import that any nonconforming use previously allowed under that subsection must thereafter be regarded as a conforming use; any new use, if thus allowed, clearly remains a legal nonconforming use. This case does not involve a cumulating of nonconforming uses, as condemned in *Hauser v. Borough of Catasauqua Zoning Hearing Board,* 20 Pa. Commonwealth Ct. 313, 341 A.2d 566 (1975).

The objectors' alternative contention, that the 1971 change to a kindergarten use created a *conforming* permitted use at that time, is actually an attack upon the board's unappealed 1979 decision; if the board erred in 1979 by authorizing a change from a conforming kindergarten use (the official status) to a nonconforming office use, or a change from the illegal industrial training use to the nonconforming office use, that objection comes too late. The unappealed 1979 decision reestablished the official status as that of a legal nonconforming office use, which was a proper basis for the application of subsection (b)(5) in 1982. *Commonwealth v. Cieslak,* 179 Pa. Superior Ct. 441, 115 A.2d 418 (1955), which involved an antecedent illegal use, is therefore inapplicable.

We also agree with the trial court judge's affirmance of the board's conclusion that the change proposal meets the express standards under subsection (b)(5).

### Nonconforming Structure Rehabilitation

Because the evidence has indicated that the nonprofit corporation owner of the building in question proposes to spend more than $100,000 upon its improvement, the objectors contend that approval under subsection (b)(17) is a prerequisite to the zoning approval under review in this case. In that respect, the

objectors, and perhaps also the owner, have not distinguished between the proposed use which was approved and is under review here and the separate zoning approval which is required as a condition precedent—not to the proposed *use* within the structure—but to the issuance of a building permit for the proposed physical work on the structure. The record discloses that at least from the action of the zoning administrator forward, the scope of the case, as evidenced by the decision of the zoning hearing board and the actual order of the common pleas court, has not extended beyond the question of the grant of a special exception for the photographic studio *use* within the building.

Although the record contains references to the proposed physical improvement of the building, the propriety or impropriety of that aspect, under the zoning ordinance, has not been adjudicated. Because the improvement work was not at issue, the state of the record does not permit this court to conclude whether or not the physical work on the building itself falls within the concept of rehabilitating a nonconforming structure for which zoning approval is required under subsection (b)(17). The present decision as to the proposed use, within the building, stands on its own feet. The board and court decisions here, and this court's affirmance of them, do not embrace or resolve the further zoning approval which would be required if, in fact, the proposed physical work comes within the terms of section 909.06(b)(17). The owner, and if need be, the city officials, must consider that matter apart from this present case.

#### ORDER

Now, November 3, 1983, the final order of the Court of Common Pleas of Allegheny County, affirming the decision of the Zoning Board of Adjustment of

the City of Pittsburgh which granted a special exception request for change of use, is affirmed.