H. Albert Beekhuis and I. Thurston Knight, Ap- pellants *v.* The Zoning Hearing Board of Middle- town Township and Township of Middletown, Appellees.

Argued October 9, 1980, before Judges MacPhail, Williams, Jr. and Palladino, sitting as a panel of three. Reargued April 7, 1981, before President Judge Crumlish and Judges Mencer, Rogers, Blatt, Craig, MacPhail and Palladino. Judges Wilkinson, Jr., and Williams, Jr. did not participate.

*Harry F. Dunn, Jr., Class, Saulnier, Dunn, Abel and Miller,* for appellants.

*Robert B. Surrick, Levy & Surrick,* for appellees.

OPINION BY JUDGE CRAIG, May 28, 1981:

In this zoning appeal, appellant applicants ask us to reverse an order of the Delaware County Court of Common Pleas, which dismissed their appeal and sustained a decision by the Zoning Hearing Board of Middletown Township (board) denying them two building permits for dwellings on half-acre lots.

The applicants own two separate land parcels in Middletown Township, totaling 45 acres, presently zoned R-1 residential, which requires a minimum of one acre for each single-family dwelling. In early 1976, applicants asked the township board of supervisors to rezone their property to R-2 residential, requiring one-half acre per family. Upon the supervisors' refusal, applicants applied for building permits to erect single-family homes on one-half acre lots, and when that application was refused, filed a validity appeal to the zoning hearing board under Section 1004 of the Pennsylvania Municipalities Planning Code

(MPC),[1] not a curative amendment proceeding with the governing body under the same section.

The notice of appeal to the board *was executed and filed by the attorney for the applicants,* who verified it. The appeal attacked the validity of the R-1 one-acre minimum in two respects: (1) as applied to applicants' property, the requirement was discriminatory, confiscatory, and not reasonably related to the police power because the property was served by public sewer and water, and (2) in general, the R-1 district requirement was invalid as exclusionary.

Thus, applicants challenged the ordinance by seeking a "validity variance," (an attack upon the validity of the regulation as applied to particular property, as described in *Township of Neville v. Exxon Corp.,* 14 Pa. Commonwealth Ct. 225, 230, 322 A.2d 144, 147 (1974)), and also by an attack on the validity of the ordinance generally.[2]

In setting the initial hearing, the zoning hearing board issued notices by certified mail *to the attorney for applicants* as well as to the applicants themselves.

That initial hearing date was 61 days after applicants filed their appeal to the board. At the hearing, the attorney for applicants appeared and claimed that the delay gave rise to a deemed approval of the appli-

---

[1] Section 1004 of the Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. §11004. Note that this case involves the application of the MPC as it stood before the amendments made in 1978 by the Act of April 28, 1978, P.L. 202, No. 53.

[2] Unlike the situation in *Robin Corp. v. Board of Supervisors of Lower Paxton Township,* 17 Pa. Commonwealth Ct. 386, 332 A. 2d 841 (1975) where the validity of an ordinance as applied to the property was incorrectly challenged in a curative amendment proceeding before the governing body, the two-pronged attack here was correctly directed to the zoning hearing board, because the board can deal both with variances of all kinds and validity attacks as expressly authorized by Section 1004.

cation;[3] applicants presented no further evidence in support of the appeal at that time. The board continued the hearing until February 9, when the board voted to dismiss the appeal.

The board mailed a copy of its decision to the address of each of the applicants on February 15, even though their attorney had informed the board in the first hearing that both applicants would be on extended vacations. The board sent nothing to applicants' attorney at that time, despite the fact that he executed the appeal, was counsel of record and had previously received notice of the hearing date from the board by certified mail. On March 21, 40 days after the board's decision, applicants' attorney learned of the decision by chance from the board's attorney, who delivered a copy of the decision to applicants' attorney the next day. He filed an appeal from the board's decision on March 31.

The first issue is whether the appeal to the trial court was timely. If we measure the period from the date the board presented the decision to the applicants' attorney, the appeal was timely, but if we measure from the date the decision was sent to applicants. the appeal date was later than the 30-day period mandated by the MPC.

The Township of Middletown, which intervened in the proceeding before the trial court, claimed that the appeal was untimely because not filed within 30 days of the date the opinion was "issued," pursuant to Section 1004(3)(i),[4] asserting that the date of is-

---

[3] Applicants then cited MPC §10908(9), 53 P.S. §908(9). The applicable section of the MPC is discussed below and quoted infra, n.7.

[4] Section 1004(3) was repealed by the Act of April 28, 1978, P.S. 202, No. 53, effective June 27, 1978, and replaced by 42 Pa. C. S. §§5571(b) and 5572. However, for purposes of this case, which arose before the effective date of the repeal, Section 1004(3) applies.

suance was the date the decision was sent out to applicants—February 15.

The trial court held that applicants were seeking a variance under MPC Section 912; that the appeal period was controlled by Section 1006; and that the date the decision was "issued" was the date it was sent to applicants, citing *Zimmer v. Susquehanna County Planning Commission,* 14 Pa. Commonwealth Ct. 435, 322 A.2d 420 (1974). Thus, the trial court concluded that the appeal was untimely because it was filed 14 days too late.

We initially note that the trial court's application of Section 1006 to this case is not accurate; that section applies to "[a]pplications, decisions and orders not involving the validity of an ordinance." Applicants' challenge below clearly questioned the validity of the ordinance.

In addition, the decision below seemed to proceed on the premise that only two types of validity challenges exist: namely, a Section 1004 curative amendment application to the governing body, where validity in general is attacked, and a Section 912 variance application to the zoning hearing board, where the validity of the ordinance as it applies to the property is questioned. Such a premise overlooks the words of Section 1004, which allows a landowner to take a general validity challenge to the board as well as to the governing body.

Unlike this case, our court in *Robin Corp. v. Board of Supervisors of Lower Paxton Township,* 17 Pa. Commonwealth Ct. 386, 332 A.2d 841 (1975), was presented with a validity challenge to the ordinance solely as it was applied to the particular land, and not in general; accordingly, in *Robin,* there was no occasion to refer to the board's power to examine the general validity of an ordinance under Section 1004.

President Judge CRUMLISH, concurring in *Robin, supra,* and citing *Township of Neville v. Exxon, supra,* recognized that Section 1004 is proper for "testing the constitutionality of a zoning restriction on its face as well as applied to a specific property where a variance is unavailable due to the cause of the alleged confiscation or the nature of the rezoning requested." *Robin,* 17 Pa. Commonwealth Ct. at 399, 332 A.2d at 848.

Having clarified the propriety of the proceeding and the application of Section 1004 here rather than Section 1006, we turn to a determination of whether applicants' appeal was timely filed.

Section 1004(3)(i) contains language similar to that of Section 1006; the landowner must appeal within 30 days after notice of the board's decision is "issued." In *Zimmer, supra,* we interpreted the word "issued" in Section 1006 as referring to the date the notice is mailed or sent out.[5] *See also, Taylor v. Zoning Hearing Board of Lincoln,* 46 Pa. Commonwealth Ct. 644, 407 A.2d 910 (1979).

The same subsection of Section 1004 draws a distinction between (1) appeals from a board, and (2) appeals from a denial by a governing body; when a governing body is involved, the appeal period does not begin until the landowner is "notified." We held that word to refer to the date the landowner receives the notice, in *Whitemarsh Township v. Kravitz,* 39 Pa. Commonwealth Ct. 306, 395 A.2d 629 (1978).

With some reluctance we are forced to conclude that the starting time for the appeal period *under one and the same section* differs, depending upon whether the challenge is before the board or the governing body. However, that is the inexplicably variant effect

---

[5] Up to this point, we agree with the township that Section 1004(3)(i) is applicable to the claim that the appeal was filed too late, rather than Section 1006.

of the legislative language, as strictly construed by our decisions in *Zimmer, supra,* and *Whitemarsh, supra.*

Therefore, we arrive at the same premise which the trial court did, that the date of issuance controls because the proceeding was not before the governing body, but before the board.

However, when legal counsel has signed and filed the notice of appeal, when the board has duly issued its notice of hearing to that legal counsel in person as well as to his clients, when legal counsel has appeared with his clients at the first hearing and alone was present on their behalf at the second hearing, from which the applicants themselves were absent, when the board was informed that both the applicant families would be away on vacations, and when the board thereupon inexplicably failed to issue notice of its decision to legal counsel, we cannot consider it to be a bonafide issuance of notice. To disregard the fact that a party is represented by counsel is more than a mere discourtesy to counsel; it ignores the legal reality that counsel is the parties' official contact with the tribunal, and that the parties are entitled to rely on that contact in their absence.

It is of no moment that the attorney was present when the board members orally voted, at the close of the second hearing, to dismiss. The right to appeal is measured from the issuance of the written notice of decision, not from the vote at the meeting. *Upper Leacock Township Supervisors v. Zoning Hearing Board of Upper Leacock Township,* 26 Pa. Commonwealth Ct. 451, 363 A.2d 1330 (1976). Because an appeal before the written notice would be premature, to await the written notice is necessary and proper.

In addition to the attorney's entitlement to notice by virtue of being counsel of record, there was also the requirement in Section 908(10) of the MPC, 53 P.S.

§10908(10), that the board give written notice of the decision to all persons "who have filed their name and address with the board."

We therefore hold that no valid issuance of notice was consummated until March 22, when the decision was handed to applicants' counsel. Hence, the March 31 appeal was timely.

Accordingly, we reach the second issue, whether a -deemed approval of applicants' application arose from the 61-day delay between the filing of the appeal with the board and the hearing.[6] Applicants argue that Section 908(9) controls; that section provided for a deemed approval when a hearing is not held within 45 days.

However, because applicants were challenging the validity of the ordinance under Section 1004, the 60-day maximum delay provision in Section 1004(2)(f) controlled over the former 45-day limit in Section 908(9). Section 1004(2)(f) contained no deemed approval language.[7] Thus, a deemed approval did not

---

[6] The trial court did not consider this issue, having decided that the appeal was untimely.

[7] Section 1004(2)(f) stated:

The board or the governing body, as the case may be, shall hold a hearing upon the landowner's request pursuant to sections 609.1, 910 or 913.1, whichever is applicable, commencing not later than sixty days after the request is filed unless the landowner requests or consents to an extension of time.

None of the sections cross-referenced (§609.1, 53 P.S. §10609.1; §910, 53 P.S. §10910; §913.1, 53 P.S. §10913.1) incorporates a reference to subsection (9) of Section 908, the provision which invokes a deemed approval for a tardy hearing. Sections 910 and 913.1, for example, refer to Section 908 only as to taking evidence and making a record. Moreover, the very difference in time periods suggests that the 45-day deemed approval provision in Section 908(9) was not in pari materia with the 60-day provision in Section 1004.

arise from the delay because there must be an express legislative declaration of deemed approval in the statutory or ordinance provision in order to have such a substantive result produced by procedural tardiness. *See Hopewell Township v. Wilson,* 46 Pa. Commonwealth Ct. 425, 406 A.2d 610 (1979); *Fazio v. Zoning Hearing Board of Marlborough Township,* 32 Pa. Commonwealth Ct. 243, 378 A.2d 1299 (1977).

In addition, the record reveals that applicants' attorney, when contacted by the board, freely consented to the hearing date. Therefore, despite the fact that the hearing was held one day past the 60-day limit, the attorney's consent to the extension satisfies the language of Section 1004(2)(f). We note that Section 1004(2)(f), unlike Section 908(9), does not require an agreement to an extension to be "in writing."

Thus, concluding that the appeal to the trial court was timely, but that applicants did not receive the benefit of a deemed approval, we may usefully take note of issues which possibly remain, arising from the board's conclusions that (1) separate applications as to two lots, owned by different landowners, cannot be consolidated in one appeal, (2) applicants lack standing because both lots are held as tenancies-by-entireties and the respective spouses are not co-applicants, and (3) the substantive validity attacks failed because applicants declined to present evidence on those issues before the board. Because these questions properly were not presented to us, we must remand.

To expedite the matter, we note that the first question may be resolved by the substantiation of applicants' averment, in the notice of appeal to court, that applicants "have agreed between themselves to develop their property as an entity", consistent with their allegation in the board appeal that they agreed to develop their property as a unit. These averments, if supported, could establish an informal but real joint

venture to develop the two lots (whether or not contiguous) as a single enterprise, which could be the subject of a single appeal quite properly, in that two or more lots in the same subdivision, as here, are commonly treated in one zoning appeal.

The second question, concerning the standing of applicants where their respective spouses (as cotenants by entireties of the land involved) have not been named as co-applicants, turns upon the Section 1004 requirement that validity appeals be brought by a "landowner", which is defined by MPC Section 107 (12), 53 P.S. §10107(12), as including "the legal or beneficial owner or owners of land"; the same definition, in addition to embracing purchasers, optionees and some lessees, also includes 'other persons having a proprietary interest in land. . . .'"[8] Each applicant here, as individual tenant by the entireties, would appear to have at least some proprietary interest, even if he does not possess the totality of beneficial ownership. To insure that a justiciable zoning controversy does exist, however, such an individual tenant should be required to establish that the appeal is with the consent of the spouse.

Thirdly, the substantive validity questions were clearly preserved for the court in paragraph 14 of the notice of appeal, raising the above-described issues concerning validity as applied to the particular properties and validity in general. Under MPC Section 1010, 53 P.S. §11010, the trial court, mindful of the fact that applicants declined to introduce evidence on

---

[8] The statutory definition of "landowner" in Section 107(12) of the MPC is broader in scope than the common law concept of land ownership, thus not requiring application of the traditional rule that any action brought for protection or preservation of property held by tenants by the entireties must be brought in the name of both spouses. *See, e.g., Stitzinger v. Stitzinger Lumber Co.,* 187 Pa. Super. 453, 144 A.2d 486 (1958).

validity when the board offered them the opportunity to do so, clearly has discretion as to whether or not to take additional evidence before the court itself (a remand to the board for such purposes being expressly prohibited by Section 1010). Moreover, sometimes the general validity issue of exclusionary zoning can possibly be considered solely upon the face of the zoning ordinance and map, without resort to additional evidence.

### ORDER

Now, this 28th day of May, 1981, the order of the Court of Common Pleas of Delaware County dated November 29, 1979 is reversed and this case is remanded for further proceedings in accordance with the opinion herein.

Judge MacPhail concurs in the result only.

