514 A.2d 216

In Re: Appeal of Marple Gardens, Inc. from the Denial of Its Challenge to the Validity of the Zoning Ordinance and Map of Marple Township, Delaware County, Pennsylvania, and of Its Curative Amendment Application by the Board of Commissions of Marple Township. Marple Township, Appellant.

486

Argued December 12, 1985, before Judges MAC-PHAIL and DOYLE, and Senior Judge KALISH, sitting as a panel of three.

*Michael F. X. Gillin,* for appellant.

*Michael Sklaroff,* with him, *Thomas R. Eshelman* and *Vincent J. LaBrasca,* of Counsel: *Ballard, Spahr, Andrews & Ingersoll,* and *Fronefield & DeFuria,* for appellee.

OPINION BY JUDGE DOYLE, August 7, 1986:

Before us is the appeal of Marple Township (Township) in a matter involving a challenge to the validity of the Township's zoning ordinance on the basis that it impermissibly excluded mobile home parks. The Township appeals the order of the Court of Common Pleas of Delaware County which directed that the Township issue a zoning permit to Marple Gardens, Inc. to allow Marple Gardens to develop a mobile home park on its property.

Marple Gardens, Inc. (Marple Gardens) is the owner of 17.66 acres of undeveloped real estate northwest of Lawrence Road in Marple Township. On May 5, 1983, Marple Gardens filed with the Township a challenge to the validity of the Township's Zoning Ordinance pursuant to Section 609.1 of the Pennsylvania Municipalities Planning Code (Code),[1] 53 P.S. §10609.1. In its challenge, Marple Gardens alleged that the existing zoning ordinance made no provision for mobile home parks,

---

[1] Act of July 31, 1968, P.L. 805, *as amended,* added by Section 10 of the Act of June 1, 1972, P.L. 333, *as amended.*

and proposed a curative amendment to the ordinance which would have established a mobile home park district on the land that Marple Gardens owned. In response to the challenge, the Township initially scheduled hearings to be held on June 24, 1980 before the Planning Commission, and on June 30, 1980 before the Board of Commissioners. On June 9, 1980, however, prior to these scheduled hearings, the Board of Commissioners passed a resolution pursuant to Section 609.2 of the Code,[2] 53 P.S. §10609.2, declaring its zoning ordinance to be substantially invalid. On June 23, 1980, the Township passed additional resolutions reaffirming its declaration that the ordinance was invalid, and proposing that a curative amendment be considered and adopted. On that same date the Township cancelled both scheduled hearings on Marple Gardens' challenge. Marple Gardens filed two appeals to the Court of Common Pleas, dated July 22, 1980, and August 28, 1980, both based upon the Township's failure to hold timely hearings on Marple Gardens' challenge.

On December 3, and 8, 1980, the Township adopted its own curative amendment to the zoning ordinance, establishing a mobile home park district in an area in which Marple Gardens' real estate was *not* located. Thereafter the Township attempted to reschedule a hearing on Marple Gardens' challenge for January 11, 1981. Marple Gardens declined to participate because of its outstanding appeals with the common pleas court.

The trial court consolidated Marple Gardens' appeals and, after denying the Township's Motion to Quash for lack of jurisdiction, assigned the matter to a referee to receive evidence and make recommendations to the Court. The referee conducted eleven hearings in which extensive testimony was presented addressing

---

[2] Added by Section 2 of the Act of October 5, 1978, P.L. 1067.

both the site-suitability of Marple Gardens' land and the validity of the Township's zoning ordinance. After examining the evidence, the Court determined that, as to the issue of the ordinance's validity, the Township's subsequent amendment to its ordinance was not relevant and had no effect on the challenge by Marple Gardens. Next, the court concluded that the invalidity of the Township's zoning ordinance had been established as a matter of law by the Township's own declaration of its invalidity on June 23, 1980. Finally, the court made findings of fact in which it determined that Marple Gardens' land was suitable for a mobile home park development. For these reasons, the trial court directed the Township to issue a zoning permit to Marple Gardens.

On appeal to this Court, our scope of review is limited to determining whether the finder of fact has abused its discretion to determining whether the finder of fact has abused its discretion or committed an error of law. *Kelly Appeal*, 87 Pa. Commonwealth Ct. 534, 487 A.2d 1043 (1985).

Before this Court, the Township first argues that the trial court had no jurisdiction to hear the case because the Township never acted upon Marple Gardens' challenge. A landowner who has submitted a challenge to the validity of a zoning ordinance is entitled to an appeal to "a court of competent jurisdiction" from the "denial" of its challenge.[3] Section 1004(4) of the Code[4] provides that for purposes of the landowner's appeal:

---

[3] Section 2(a)[1421] of the Judiciary Act Repealer Act, Act of April 28, 1978, P.L. 202, 42 P.S. §20002(a)[1421].

[4] 53 P.S. §11004(4). The original Sections 1001 to 1011 of the Code were repealed by the Act of June 1, 1972, P.L. 333, *as amended,* which then enacted the current Sections 1001 to 1011 of the Code, 53 P.S. §11001-11011.

The landowner's request for a curative amendment is denied when (i) the governing body notifies the landowner that it will not adopt the amendment, or (ii) the governing body adopts another amendment which is unacceptable to the landowner, or (iii) the governing body fails to act on the landowner's request, in which event the denial is deemed to have occurred on the thirtieth day after the close of the last hearing on the request unless the time is extended by mutual consent between the landowner and the municipality.

In *Galbreath v. Board of Supervisors of Northampton Township,* 55 Pa. Commonwealth Ct. 165, 423 A.2d 45 (1980) we considered whether a "deemed denial" had occurred under similar factual circumstances. In *Galbreath,* the Township held one hearing on the landowner's Section 609.1 challenge, but then cancelled further hearings and instead took action under Section 609.2 to consider its own curative amendment. We held that the Township's action under Section 609.2 did not place a moratorium on the landowner's prior challenge, and that, under Section 1104(4)(iii), a "deemed denial" of the landowner's challenge had occurred thirty days after the last hearing on the challenge, thus entitling the landowner to appeal.

In the present case, the Township attempts to distinguish *Galbreath* on the fact that here, the Township has held *no* hearings on the challenge. The Township contends that under Section 1004(4)(iii) a denial occurs only after a hearing has been held. It suggests that the only remedy for the Township's failure to hold *any* hearing within the sixty day time period specified under Section 609.1 is an action in mandamus to compel the Township to hold such a hearing. This argument is without merit. The language of Section 1004(4)(iii) does

not, as the Township seems to suggest, condition denial upon the Township's action in holding a hearing. It clearly states that the request is denied *when "the governing body fails to act on the . . . request."* The additional language concerning the "last hearing" is provided to specify the exact date such a denial is deemed to have occurred and it assumes the governing body will act in good faith and hold a hearing. Thus, while some ambiguity exists in situations such as this where no hearing has taken place, the question remaining to be resolved is not in *whether* there has been a denial, but rather *when* the denial has occurred.

The Township cites *Beekhuis v. Zoning Hearing Board of Middletown Township,* 59 Pa. Commonwealth Ct. 307, 429 A.2d 1231 (1981) and *Price v. Hanover Township Zoning Hearing Board,* 72 Pa. Commonwealth Ct. 5, 455 A.2d 1267 (1983), for the proposition that the failure to hold a hearing within the sixty-day period specified in Section 609.1 does not constitute a deemed denial. These cases are clearly inapplicable, since they considered whether the failure to hold a hearing under Section 609.1 constituted a deemed *approval* under Section 908(9) of the Code.[5] *Beekhuis,* 59 Pa. Commonwealth Ct. at 315, 429 A.2d at 1236-37; *Price,* 72 Pa. Commonwealth Ct. at 9, 455 A.2d at 1269. The cases held that Section 1004(2)(f) rather than Section 908 controlled and that since Section 1004 contained no "deemed approval" language, none had occurred. These cases did *not* address whether the failure to hold a hearing constituted a deemed *denial* under Section 1004(4)(iii).

In situations such as this, where the Township has failed to hold *any* hearing, it seems reasonable to construe the language in Section 1004(4)(iii) specifying

---

[5] 53 P.S. §10908(9).

"thirtieth day after the close of the last hearing," as the thirtieth day after the final day on which the Township could have commenced a hearing. Since Section 609.1 requires that the Township hold a hearing within sixty days of the filing of the request, a denial of the request will be deemed to have occurred on the thirtieth day after that, or the ninetieth day from the original filing. In this case the request was filed on May 5, 1980. No hearings having been held within the sixty day period, the request was deemed denied on the thirtieth day after that, August 3, 1980. Thus, we hold that the request had been denied by the time Marple Gardens filed its second appeal on August 22, 1980, and that therefore the trial court had jurisdiction to hear the case.[6]

Next, the Township contends that the trial court was without authority to appoint a referee to take evidence in this matter, arguing that the referee was not an "expert" whose use would be allowed under Section 1011(2) of the Code, 53 P.S. §11011(2). The Township, however, overlooks Section 1010 of the Code, 53 P.S. §11010, which specifically authorizes the court to "refer the case to a referee to receive additional evidence." Clearly, the court's appointment of a referee was permitted.

The Township also argues that the curative amendment which Marple Gardens proposed was defective in that it did not provide for a "Mobile Home Park" as that term is defined in Section 107(12.3) of the Code, 53 P.S. §10107(12.3). The Township notes that Marple Gardens' curative amendment permits the owner of its Mobile Home Park district to sell individual mobile home lots,

---

[6] The Township argues that Marple Gardens should have consented to the Township's rescheduled hearing on January 19, 1981, some eight months after Marple Gardens filed its application. In view of the sixty day time period in which the Township is required to hold a hearing, this argument is unreasonable.

while the Code defines Mobile Home Park as a "parcel of land under single ownership." The adequacy of Marple Gardens' proposed curative amendment, however, is no longer at issue. The trial court did not adopt the curative amendment; indeed, it had no authority to order such legislative action. *Board of Commissioners of Ross Township v. Harsch,* 78 Pa. Commonwealth Ct. 395, 467 A.2d 1183 (1983), *Ellick v. Board of Supervisors of Worcester Township,* 17 Pa. Commonwealth Ct. 404, 333 A.2d 239 (1975). As we stated in *Appeal of Olson,* 19 Pa. Commonwealth Ct. 514, 522, 338 A.2d 748, 752 (1975):

> Once the court has concluded that the zoning ordinance unlawfully prohibits or restricts the landowner's proposed development, then the landowner should be permitted to proceed with his proposed development, subject to those reasonable zoning regulations, restrictions and codes applicable to the class of usage proposed by the land developer.

*See Cracas v. Board of Supervisors of West Pikeland Township,* 89 Pa. Commonwealth Ct. 424, 492 A.2d 798 (1985).

Despite the fact that the trial court did not adopt the curative amendment, but rather permitted Marple Gardens' development as proposed, the Township still maintains the defects in the amendment were fatal to the proposal because it prevented the Township from having reasonable notice of the proposed use. Section 1004(2)(c) of the Code states:

> The request [for curative amendment] shall be accompanied by plans and other materials describing the use or development proposed by the landowner in lieu of the use or development permitted by the challenged ordinance or map. Such plans and other materials shall not be re-

quired to meet the standards prescribed for pre-
liminary, tentative or final approval or for the
issuance of a permit *so long as they provide rea-
sonable notice of the proposed use or develop-
ment and a sufficient basis for evaluating the
challenged ordinance or map in light thereof.*
(Emphasis added.)

It is true that we have held that curative amendment
proceedings which do not include plans and materials
describing the use or development proposed by the
landowner are fatally defective. *Winston Corp. v. Board
of Supervisors of Patton Township,* 88 Pa. Common-
wealth Ct. 208, 489 A.2d 303 (1985); *Union Run Corp.
v. Lower Paxton Township Board of Supervisors,* 53 Pa.
Commonwealth Ct. 89, 416 A.2d 1157 (1980). In the
present case, however, the record is clear that Marple
Gardens *did* submit plans with its challenge describing
its proposed mobile home park. While the Township
points to various inadequacies in the description of the
proposed use, it remains a fact that they were more
than adequate to put the Township on sufficient notice
that the proposed use was that of a mobile home park.
We also note that the Township's concern that the devel-
opment be consistent with the statutory definition of
mobile home park can still be addressed through the
permit process, since the development has been ap-
proved subject to the "regulations, restrictions and
codes applicable to the class of usage proposed."

The Township next contends that the trial court
erred in determining that the zoning ordinance improp-
erly excluded mobile home parks. Initially, the Town-
ship notes that the trial court did not properly address
this issue, but rather relied upon the Township's own
findings of fact and declaration of invalidity contained in
its subsequently-held Section 609.2 proceeding. In this
respect the court concluded that:

> [t]he Commissioner's action in adopting its Cura-
> tive Amendment after public hearings in De-
> cember, 1980, establishes as a matter of law that
> the Township's prior existing Zoning Ordinances
> [sic] was substantially invalid.

The court reasoned that Marple Gardens was relieved of
its burden to prove the ordinance excluded mobile
home parks because the "Township's own actions put
this issue to rest." Thus, the trial court stated:

> The only question before us is whether the
> Appellant's land and use plan is reasonably
> suitable for the development proposed. . . .

We must agree with the Township that the court
should not have considered the Township's own actions
to be determinative on the issue of exclusion. First, it is
important to note that the Township's actions under
Section 609.2 of the Code constituted a separate
proceeding held *after* Marple Gardens filed its chal-
lenge, and that this proceeding was not before the court
on appeal. Thus, the Township's factual findings on
which it based its declaration of invalidity were not
before the court for review. In the matter which was
before the court, Marple Gardens' challenge, the Town-
ship held no hearing and made no findings. While the
Township's actions in an unrelated matter may have had
some evidentiary value, it was nonetheless incumbent
upon the court to make its own findings of fact on any
matter it deemed necessary for the resolution of this
issue.

Secondly, the Township's resolution declaring its or-
dinance to be invalid would not, in any event, establish
invalidity as a matter of law. The question of whether an
ordinance is exclusionary is a question of law. *Cracas v.
Board of Supervisors of West Pikeland Township*, 89 Pa.
Commonwealth Ct. at 427, 492 A.2d at 800. As such, a
local agency's determination of this question does not

bind the reviewing court, and the issue remains a proper subject for judicial review on appeal. *See* Section 754 of the Local Agency Law, 2 Pa. C. S. §754.

It remains for us to decide whether the trial court's determination that the ordinance was invalid may stand despite the court's failure to make its own factual findings. A review of the language of the zoning ordinance reveals that, on its face, it totally excludes mobile home parks. At the time of the challenge, Section 85-137 of the ordinance stated:

*Prohibited Uses.*

No lot or premises shall be used as a junk or automobile wrecking yard, a trailer camp or a tourist cabin or automobile court.

"Trailer camp" was defined in Section 853 as "a lot or premises occupied or designed for occupancy by one (1) or more vehicles used for living or sleeping purposes." In *Appeal of Township of Middletown,* 51 Pa. Commonwealth Ct. 465, 414 A.2d 768 (1980), we reviewed an ordinance provision which imposed a township-wide prohibition on "trailer camps" using a virtually identical definition of that term,[7] and held that such a prohibition amounted to an exclusion of mobile home parks from the township. *Id.* at 468, 414 A.2d at 769-70. We are bound by *Township of Middletown* and must similarly conclude that the Township's prohibition of trailer parks has excluded mobile home parks from its boundaries.

Since we find that there has been a total exclusion of a permitted use as a matter of law, the trial court's failure to make a factual finding on that issue is harmless error. In addition, we note that the court was not required to make a finding as to whether the Township

---

[7] In *Middletown,* "trailer camp" was defined as "a lot or premises used for occupancy by two (2) or more trailers," and "trailer" was defined as "any vehicle used for living and sleeping purposes." 51 Pa. Commonwealth Ct. at 467-68, 414 A.2d at 769.

was a "logical area for development and growth" as required under the "fair share" analysis set forth in *Surrick v. Zoning Hearing Board of Upper Providence Township,* 476 Pa. 182, 382 A.2d 105 (1977). In *Fernley v. Board of Supervisors of Schuylkill Township,* 509 Pa. 413, 502 A.2d 585 (1985), the Supreme Court held that the *Surrick* fair share analysis, which requires a municipality to meet its share of the regional housing needs, has no application in cases involving a total exclusion. The *Fernley* court stated:

> The 'fair share' test enunciated in *Surrick, supra,* was judicially developed as a means of analyzing zoning ordinances which effect a partial ban that amounts to a *de facto* exclusion of a particular use, as distinguished from those ordinances which provide for a total or *de jure* exclusion. . . .
>
> Considerations underpinning the fair share principle are irrelevant when the challenged zoning regulation totally excludes a basic form of housing such as apartments.

*Id.* at 418-19, 502 A.2d at 587-88 (footnote omitted). Because the Township's exclusion of mobile home parks was total, a finding as to whether the Township had met its fair share of the regional housing needs was not necessary.

Finally, the Township contends that the trial court erred in requiring the Township to approve Marple Gardens' plan, arguing that the site selected was not suitable for the development of a mobile home park. Section 1011(2) of the Code, 53 P.S. §11011(2), sets forth certain factors which the courts are to consider when fashioning relief in such a situation.[8] The trial

---

[8] Section 11011(2) provides that whenever the court finds an ordinance invalid because it unlawfully excludes a use, it shall consider the following factors in framing its relief:

court made comprehensive findings of fact on this issue which it later summarized as follows:

> The location is 17.66 acres along Lawrence Road, a four lane major divided highway crossing Marple Township and connecting with West Chester Pike, a major four-lane divided highway connecting Philadelphia with West Chester; and Sproul Road, a major—in part four lane highway going through Marple Township. Marple Township provides all the services one would expect in a present day suburban community; an adequate and well-developed school system, police department, shopping facilities; and other services such as sewer and water are readily available. There is no evidence that Marple cannot service this use at this site.

In addition, the court found that the site was suitable for the proposed use in that the proposal provided for adequate drainage and soil retention by the use of retention walls, grading, and the installation of a storm sewer sys-

---

(i) the locational suitability of the site for the uses proposed including the general location of the site with regard to major roads, sewer facilities, water supplies, schools and other public service facilities or the comprehensive plan and zoning ordinance of the municipality and the county if they exist; (ii) the impact of the proposal on regional housing needs, the transportation network, and the other public services and facilities; (iii) the suitability of the site for the intention of use proposed by the site's soils, slopes, woodland, wetlands, flood plains, aquifers, natural resources and other natural features; (iv) the impact of the proposed use on the site's soils, slopes, woodlands, wetlands, flood plains, natural resources and natural features, the degree to which these are protected or destroyed, the tolerance of the resources to development and any adverse environmental impacts; and (v) the impact of the proposal on the preservation of agriculture and other land uses which are essential to public health and welfare.

tem, that 3.5 acres of the tract would be set aside for community use with no mobile homes to be constructed in the flood plain, and that the plan made use of natural terrain to preserve the existing natural enhancements, including wooded areas and a creek. Thus, the trial court considered all the factors set forth in Section 1011(2) and concluded that the site could be developed as proposed.[9] Our review of the record indicates that the trial court's findings on this issue are well supported by the evidence. Therefore we must conclude that the trial court did not err in directing that Marple Gardens' plan be approved subject to applicable building and development regulations. Accordingly, we shall affirm its decision.

ORDER

NOW, August 7, 1986, the order of the Court of Common Pleas of Delaware County, No. 10044, dated May 8, 1984, is hereby affirmed.

---

[9] The Supreme Court's opinion in *Fernley* suggests that at least some of the factors enumerated in Section 1011(2) of the code are irrelevant in a total exclusion case inasmuch as they are a legislative restatement of the "fair share" test already held by that court to be inapplicable in such cases. 509 Pa. at 424, 502 A.2d at 591. We need not resolve the issue in this case, however, since the trial court has considered *all* of the factors and has nonetheless concluded that the development should be permitted.