C & M DEVELOPERS,
INC., Appellant,

v.

BEDMINSTER TOWNSHIP ZONING
HEARING BOARD.

Commonwealth Court of Pennsylvania.

Argued March 5, 2001.
April 20, 2001.

George M. Carr, Doylestown, for appellant.

Stephen P. Imms, Jr., Harleysville, for appellee.

Before COLINS and FRIEDMAN, Judges, and McCLOSKEY, Senior Judge.

FRIEDMAN, Judge.

C & M Developers, Inc. (C & M) appeals from the June 30, 2000 order of the Court of Common Pleas of Bucks County (trial court), which affirmed the decision of the Bedminster Township (Township) Zoning Hearing Board (ZHB) to deny C & M's substantive challenge to the constitutional validity of the Bedminster Township Zoning Ordinance (Ordinance). C & M claimed that the Ordinance imposes unreasonable restrictions upon the development of single-family detached housing in the Township's AP–Agricultural Preservation Zoning District (AP district). We affirm.

On or about August 12, 1996, the Township adopted Ordinance No. 118, which created the AP district to "protect the area designated as a significant agricultural area by Bucks County in its Natural Resources Plan and the areas of the [T]ownship where farming predominates." (Findings of Fact, Nos. 6, 7; R.R. at 2567a.) In furtherance of this goal, Ordinance No. 118 amended the Township's Ordinance to limit the subdivision and development of a tract of land in an AP district consisting of ten or more acres.

Where a landowner wants to subdivide and develop ten or more acres in an AP district, the Ordinance now requires a site analysis pursuant to Article VI of the Ordinance. (R.R. at 2570a.) In performing the site analysis, the landowner must identify the "non-buildable site area," [1] that is, those portions of the site that the Ordinance protects from development. The Ordinance protects the following: (1) 60% of prime farmland; [2] (2) 50% of farmland of statewide importance; [3] (3) 50% of farmland of local importance; [4] (4) 100% of floodplain and floodplain soils; (5) 100% of wetlands, lakes, ponds and watercourses; (6) 80% of wetland margins; (7) 70% of lake or pond shorelines; (8) 25% of woodlands; (9) 25% of steep slopes of 15 to 25 degrees; and (10) 30% of steep slopes of 25 degrees or more. (R.R. at 2578a.) After determining the protected, non-buildable portions of the site, the landowner subtracts the non-buildable site area from the "base site area" [5] to arrive at the "net

1. Section 234(a) of the Ordinance states that the "non-buildable site area" is the portion of a tract that may not be developed either because it is farmland or because it is a natural resource that must be protected in accordance with section 602(2)(b) of the Ordinance. (R.R. at 2565a, 2578a.)

2. Section 216(a) of the Ordinance states that prime farmland "is land best suited for producing food, feed, forage, fiber and oilseed crops, and also available for these uses.... It has the soil quality, growing season and moisture supply needed to produce sustained high yields of crops economically when treated and managed ... according to modern farming methods." (R.R. at 2563a.)

3. Section 216(b) of the Ordinance states that "Farmland of Statewide Importance" is Ca-

pability Class II and Capability Class III land that does not qualify as prime farmland. (R.R. at 2563a.)

4. Section 216(c) of the Ordinance states that "Farmland of Local Importance" is Capability Class IV land selected by Bucks County as important for the production of food, feed, fiber, forage and oilseed crops. (R.R. at 2564a.)

5. Section 602(1) of the Ordinance states that the "base site area" excludes portions of a tract of land that may not be usable for the activities proposed for the site, e.g., land within the ultimate right-of-way of existing roads, utility rights-of-way or easements. (R.R. at 2577a.)

buildable site area." (Findings of Fact, No. 18; R.R. at 2578a, 2580a.)

A landowner may subdivide and develop the net buildable site area in accordance with the requirements of the Ordinance. (Findings of Fact, No. 18; R.R. at 2570a.) First, all proposed lots must contain a contiguous area of at least one acre, or 43,560 square feet. (Findings of Fact, No. 18; R.R. at 2570a.) Second, all residential lots must have a contiguous "building envelope" [6] of at least 10,000 square feet to provide sufficient area and flexibility for the general location of the building, driveway, parking, patios and other improvements and site alterations while meeting natural resource protection and minimum setback requirements. (R.R. at 2571a.)

As for the non-buildable site area, the Ordinance suggests four possible options for the landowner: (1) fee-simple dedication to the Township, which the Township may refuse; (2) transfer to a private conservation organization that will continue to make the land available for agricultural activities; (3) transfer to private ownership with the agreement that the land is intended for agricultural activities and/or protecting natural resources and shall not be subdivided or developed; and (4) ownership by a homeowners association, which shall be encouraged to make the area available for an agricultural enterprise. (Findings of Fact, No. 19; R.R. at 2581a.)

C & M is the equitable owner of five parcels of land in the Township, and all are located in the Township's AP district. (Findings of Fact, Nos. 1, 3.) On or about August 20, 1996, C & M filed a substantive challenge with the ZHB, alleging, *inter alia*, that the preservation of 50% of farmland soils of statewide or local importance on tracts of ten or more acres in an AP district is unreasonable.[7] (Findings of Fact, Nos. 8–9.) The ZHB held hearings on the matter from September 1996 to September 1999. (Findings of Fact, No. 11.)

On August 18, 1999, the Township's Board of Supervisors adopted Resolution No. 129, which resolved that the Township's Ordinance might be substantively invalid. (Findings of Fact, No. 89.) The resolution stated that the possible invalidity consists of:

[A]n inconsistency in various agricultural uses ... permitted in the AP district, the impact of the Table of Dimensional Requirements and the Environmental Performance Standards of the Ordinance throughout the various zoning districts, and the possible lack of available land for those zoning purposes set forth at sections 604(3), (4) and (5) of the [Pennsylvania] Municipalities Planning Code [MPC].[8]

---

6. Section 208(a) of the Ordinance states that the building envelope shall not include the area of any required setbacks, except for driveways that would cross yards, buffer yards, natural features with 100 percent protection and the portion of those natural features that may not be developed or intruded upon as specified in section 602 of the Ordinance. (R.R. at 2563a.)

7. We note that 81.6% of soil in the Township is farmland. (ZHB's op. at 18.) Of that total, 4.3% is prime farmland soil, 66.3% is soil of statewide importance and 11% is soil of local importance. (Findings of Fact, No. 30.)

8. Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§ 10604(3), (4) and (5). Section 604 of the MPC states that the provision of a zoning ordinance shall be designed to: (1) preserve prime agriculture and farmland considering topography, soil type and classification and present use, 53 P.S. § 10604(3); (2) provide for the use of land for residential housing of various dwelling types encompassing all basic forms of housing, 53 P.S. § 10604(4); and (3) accommodate reasonable overall community growth and opportunities for development of a variety of residential dwelling types and nonresidential uses, 53 P.S. § 10604(5).

(Findings of Fact, No. 89.) C & M argued to the ZHB that Resolution No. 129 was an admission by the Township that the Ordinance was invalid.

After considering the evidence presented at the hearings, the ZHB denied C & M's validity challenge. C & M appealed to the trial court, which affirmed the ZHB's decision. C & M now appeals to this court.[9]

## I. Reasonable Use of Land

C & M argues that the Ordinance does not allow the reasonable use of land in an AP district because a landowner may develop only 50% of farmland soils of statewide or local importance.[10] (C & M's brief at 45.) We disagree.

When presented with a challenge to a zoning ordinance, the reviewing court presumes the ordinance is valid. The burden of proving otherwise is on the challenging party.

A zoning ordinance is a valid exercise of the police power when it promotes public health, safety or welfare and its regulations are substantially related to the purpose the ordinance purports to serve. In applying that formulation, Pennsylvania courts use a substantive due process analysis which requires a reviewing court to balance the public interest served by the zoning ordinance against the confiscatory or exclusionary impact of regulation on individual rights. The party challenging the constitutionality of certain zoning provisions must establish that they are arbitrary, unreasonable and unrelated to the public health, safety, morals and general welfare. Where their validity is debatable, the legislature's judgment must control.

Unquestionably, preservation of agricultural land is a legitimate governmental goal appropriately implemented by zoning regulation. In ... years [past], both Congress and Pennsylvania's General Assembly have instituted a variety of measures designed to protect farmland, in particular, and the agriculture industry, generally. Moreover, Section 604(3) of [the MPC] specifically requires that zoning ordinance provisions be designed "to preserve prime agricultur[e] and farmland considering topography, soil type and classification, and present use."

*Boundary Drive Associates v. Shrewsbury Township Board of Supervisors*, 507 Pa. 481, 489–90, 491 A.2d 86, 90–91 (1985) (citations omitted) (footnotes omitted). Moreover, section 603(b)(5) of the MPC states that zoning ordinances may permit the preservation of "agricultural land." 53 P.S. § 10603(b)(5).

Here, the Ordinance is designed to preserve 50% of farmland soils of statewide or

---

9. Where the trial court takes no additional evidence, our scope of review is limited to determining whether the ZHB committed an abuse of discretion or an error of law. *Baker v. Chartiers Township Zoning Hearing Board*, 677 A.2d 1274 (Pa.Cmwlth.1996), *appeal denied*, 547 Pa. 738, 690 A.2d 238 (1997). The ZHB abuses its discretion when its findings of fact are not supported by substantial evidence. *Valley View Civic Association v. Zoning Board of Adjustment*, 501 Pa. 550, 462 A.2d 637 (1983). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.*

10. C & M does not challenge those provisions of the Ordinance that restrict the development of land based on its topography or based on the existence of wetlands or other natural features. (C & M's brief at 23.) C & M also concedes that a 10,000 square foot building envelope free of wetlands, watercourses and other material features "may be reasonable" and that a lot size of one acre is "apparently reasonable." (C & M's brief at 44–45.) Finally, C & M does not challenge the Township's right to preserve *prime* farmland soils. (C & M's brief at 45.)

local importance, i.e., Capability Class II, III and IV soil, on tracts of land in an AP district consisting of ten or more acres. The Township chose the 50% figure so that there would be some preservation of farmland in the AP district along with some development. (Findings of Fact, Nos. 18, 55.) The Township also realized that a large tract of land may be a person's single largest asset, and, out of fairness, the Township wanted to allow such a person to subdivide off a portion of the land for development. (Findings of Fact, Nos. 18, 23.) Considering these findings and the statutory authority for the protection of farmland, we conclude that the 50% figure is reasonable, is related to the goal of preserving agricultural land without being overly restrictive, and is related to the public welfare.[11]

## II. Extraordinary Justification

■ C & M next contends that the Township had the burden to present, and failed to present, extraordinary justification for its density requirement of one house per two or more acres. C & M asserts that the effect of subtracting 50% of farmland from a site is to create a density requirement that might be one house per 2.82 acres, one house per three acres or one house per twenty acres. (*See* C & M's brief at 42, 45.) However, we point out that the Ordinance does not set forth a density requirement for the AP district. (*See* Table of Dimensional Regu-

lations, R.R. at 2574a.) Indeed, C & M's own plans for the development of two of its tracts under the Ordinance show thirty-two contiguous one-acre lots and twenty-five contiguous one-acre lots, respectively; the lots are *not* spread out over the entire site so that there is one house per 2.82, three or twenty acres. (R.R. at 2743a, 2749a.) Certainly, the Township did not have to establish extraordinary justification for a non-existent density requirement.[12]

## III. Resolution No. 129

■ Finally, C & M argues that the Township's Resolution No. 129 is an admission by the Township that the Ordinance is invalid. However, in *Appeal of Marple Gardens, Inc.,* 99 Pa.Cmwlth. 485, 514 A.2d 216 (1986), *appeal denied,* 514 Pa. 650, 524 A.2d 496 (1987), this court rejected a similar argument, pointing out that a resolution of invalidity is a separate proceeding and that a local agency's subsequent determination with regard to the invalidity of the zoning ordinance is a question of law that is subject to further review on appeal. Therefore, C & M cannot prevail on this issue here.[13]

Accordingly, we affirm.

## ORDER

AND NOW, this 20th day of April, 2001, the order of the Court of Common Pleas of

---

11. C & M's five tracts of land are currently being used for agricultural purposes. (Findings of Fact, No. 62.) C & M's proposal for the development of its five tracts of land does not allow for the preservation of *any* of the farmland. (Findings of Fact, No. 70.) Given the statutory authority for the preservation of agricultural land based on soil classification and present use, it is certainly unreasonable to preserve *none* of C & M's farmland.

12. The case law relied upon by C & M pertains to minimum lot sizes of two or more acres. However, the Ordinance sets forth a minimum lot size of one acre, *not* two or more acres. (R.R. at 2574a.)

13. Moreover, it is not clear from Resolution No. 129 whether the Township intends to address the 50% restriction on the development of ten or more acres of farmland in an AP district. Thus, the Resolution may be irrelevant.

Bucks County, dated June 30, 2000, is hereby affirmed.